Chief Justice Robertson,
delivered the Opinion of the Court.
Under the authority of a statute of 1831, amendatory of the charter of incorporation of the city of Louisville, declaring that, in opening or extending streets, the corporate authorities might proceed to assess and enforce, through the instrumentality of the Circuit Court for Jefferson county, as well the value of advantages, as of damages, which, in the opinion of a, jury, would accrue to any of the citizens in consequence of any spell opening or extension — the Mayor and Councilmen of that city, in April, 1832, petitioned the said Court to cause summonses to issue against Joseph Merril and the heirs of Gabriel Overstreet, to show cause why sixth cross street should not be extended through their ground, from Jefferson to Green street; and upon the appearance of Merril and Overstreet’s heirs, an amended petition was filed, suggesting that the widow and heirs of one Sutton, and Benjamin P. Buckner, who held as purchaser under one of those heirs, owned all the ground adjoining the western side of the street, as proposed to be extended, and would be greatly benefited by the extension; *29 and therefore preying for citations against them also, to show cause why the street should not be extended, and why judgment should not be rendered against them, for the assessed value of the alleged benefit. And afterwards, on the motions of Merril and Overstreet’s heirs, writs of ad quad damnum, for their respective benefits, having been ordered, and the court having, also, directed an assessment of the value of the advantage of the proposed extension to Buckner and Sutton’s heirs—the jury, empannelled pursuant to the order, reported that they had assessed the damages to Merril at six hundred and fifty dollars, and those to Overstreet’s heirs at six thousand dollars, and the value of advantage to Sutton’s heirs at nine hundred dollars; and thereupon, judgment was rendered against “Emily Sutton &c.”’ for nine hundred dollars, in favor of the city of Louisville: to reverse which, Emily Sutton, the widow, and, others, the heirs of Sutton, deceased, prosecute this writ of error.
A joint judg’t against the heirs, subjecting each to the payment of the whole sum, in such case, cannot be sustained if there could be any such judgment, it should be a separate judgment against each one, according to his interest.
The judgment is vague, not showing whether certain parties are included in it, or not.
The proceedings were under a statute which only authorized the city to be actor, and a judg’t against defendants, who were summoned at the instance of individuals,—cannot be sustained.
The judgment must be reversed for several reasons:—
First. One of Sutton’s heirs appears to have been an infant, and the record exhibits no proof that she appeared, or was ever cited to appear.
Second. As the interest of Emily Sutton was only that of widow, a joint judgment against herself and Sutton’s heirs was unjust and erroneous.
Third. As the estimated advantage was several, it was erroneous to render a judgment in solido against all, for the whole amount of the joint assessment, and thus impose on each the whole burthen.
Fourth. The judgment is vague and indefinite in not showing whether Buckner is embraced in it, nor whether the heir from whom he purchased, and who was not made a party, is included.
Fifth. The city alone had aright to such an assessment and judgment against Sutton’s heirs; and the order for the inquisition as to them, seems to have been made, not at the instance of the city, but on the motion of Overstreet’s heirs, who had no right to ask such an inquiry.
An act of the Gen. Assembly authorizes the mayor and council of Louisville (thro' the intervention of the Jefferson Circuit Court) to cause the value which the “advantages of opening any street or alley, or the extension thereof” will be “to each and every proprietor who will have a front thereon”— to be assessed by a jury, and to compel such proprietors to pay the assessments to the city: the act is, in that respect, unconstitutional, and cannot be enforced. For—
An owner of private property cannot be required to pay, in any direct mode, for any benefit or advantage which may accrue to him from public improvements.The constitution protects him against all such demands.
When ‘private property’ is required ‘for public uses,’ the owner is, by the constitution, entitled to just compensation for it, in money. But if, in addition to its intrinsic value, he claims an indemnity, for the losses and in conveniencies which will, incidentally devolve upon him, in consequence of the public appropriation of his property—in estimating those incidental losses and inconveniences, the profits, advantages and conveniences, which will result to him, from the uses to which the public applies the property taken, are also to be estimated, and the excess of the former over the latter, is the true amount of incidental damages. And the only way in which he can be made to pay for advantages which, as an individual, he derives from public improvements, is by a comparison and set off, in that mode.
*30 Sixth. But there is, in our opinion, a more radical error than any of the foregoing; and that is, that there was, no constitutional power to render such a judgment.
A corporation established by a legislative grant, can possess no other powers than those delegated by its charter, or such as result by necessary implication from its existence, as a legal being. Certainly, it can exercise no power, either delegated or resulting, which the Legislature could not confer, or the exercise of which would be unconstitutional. And it seems to us, that the power asserted in this case, is inconsistent with the spirit of the constitution, and with the proper ends and limitations of legislative authority.
The first section of the tenth article of the constitution of Kentucky declares — “That all freemen, when “they form a social compact, are equal, and that no man “or set of men are entitled to exclusive, separate public “emoluments or privileges from the community, but in “consideration of public services;” and the twenty-eighth section of the same article is in the following language: — “To guard against transgression of the high powers “which we have delegated, we declare, that every “ thing in this article is excepted out of the general powers, “ of the government, and shall forever remain inviolate; “ and that all laws contrary thereto, or contrary to this “ constitution, shall be void.”
The twelfth section of the same article, also, in part declares: “Nor shall any man’s property be taken, or “ applied to public use, without the consent of his rep “resentatives, and without just compensation being pre “viously made to him.”
The object of those fundamental provisions was to preserve, as far as may depend on the practical operations of government, a just equality among all the constituent members of the body politic. And it seems to us that the spirit and end of the constitution, as thus announced, will be frustrated to some extent, or must be unwarrantably circumscribed, if the judgment in this case should be deemed constitutional.
The assessment against the plaintiffs must be considered either as a tax on them, or as an appropriation of *31 their property to public use, without their consent; and in either of these aspects of it, can it be sustained as consistent with the constitution?
If it be a tax — is there no limitation on the power of taxation? and has not some constitutional principle been violated? The State constitution contains no express restriction on the taxing power. But nevertheless, this power cannot be, in all respects, arbitrary and unlimited.
The nature and object of taxation, and the spirit of justice and equality which pervades the constitution and is consecrated by the foregoing first section of the tenth article, necessarily prescribe an impassable boundary to this — which, more than any other legislative power, is constantly exercised and felt, and is always liable to be perverted and abused. And that limit is, that a common burden should be sustained by common contributions, regulated by some fixed general rule, and apportioned according to some uniform ratio, of equality.— Thus, if a capitation or personal tax be levied, it must be imposed on all the free citizens equally and alike; or if an advalorem or specific tax be laid on property, it must bear equally, according to value or kind, on all the property, or on each article, of the same kind, owned by every citizen; and no citizen or class of citizens, owning any property of the kind subjected to taxation, can be exempted constitutionally on any other ground than that of valuable and peculiar public services: for otherwise, one man or a "set of men” might be entitled to enjoy “exclusive privileges,” or legal exemptions, which are substantially the same, without the only constitutional consideration of public services.
But the assessment in this case, may not be properly considered as of the nature of a public tax, because it was not a duty or contribution levied by a fixed rule, and because, also, it was not common, but was restricted to the owners of one particular lot of ground.
Then it must be an attempt to take the private property of the plaintiffs for public use, without a just compensation in money paid or secured to be paid to them, and only on the unsubstantial opinion of twelve men, that an equivalent would, in some way and at sometime, *32 be enjoyed by them, in the enhancement of the vendible price of their ground.
The object of so much of the twelfth section of the tenth article of the constitution as we have quoted, was to secure the citizen from the capricious abuse of the sovereign fight of imminent domain. That object would not be attained if the government or persons identified with it and representing its authority and interests could take the property of a citizen; and apply it to public use; without any other compensation than an ideal advantage which; in the opinion of the party acting, would arise to the owner from the effectuation of the object for which the appropriation is made. The public ought not to decide for any citizen, how far, or whether at all, he will be peculiarly benefitted by a public work or other thing for which his property is taken without his consent. If such an arbitrary and discretionary power can be exercised in such a case, the constitutional guarantee would be of little or no value, for it would be easy to suppose cases in which even a jury would decide that the construction of a road, of the opening or improving of a street, or canal, near or through the land of another, would incidentally benefit the owner, by its resulting facilities to him, or by a consequential enhancement of the estimated value of his property, when, in his own opinion, or even in fact, considering the use he makes and intends to make of it, such an improvement, with such a locality, would be inconvenient to him, and injurious to his interest, and when, therefore, he would sooner pay to have it made elsewhere and farther from him, or to prevent the making of it any where. Besides the supposed or actual augmentation of the vendible value of one’s estate, is not only not advantageous to him, but may be positively disadvantageous and onerous, if he should be determined to keep and never to sell it. And whether he will, or should keep and enjoy it himself, or sell it, no one but himself can know or have any right to decide for him.
Moreover, as every public work should be presumed to be useful to all who may enjoy it, the just equality contemplated by the constitution, would not allow the ex *33 action of the estimated value of the work to one citizen, without making proportionate exactions for that or some other public object, from others who may also be benefitted. Improvements, made for common benefit, should be made by common means, or by a just distribution of the public burthen, by approximating as near equality as may be reasonably expected in the administration of the concerns of a diversified community.
Hence, when the property of one citizen is taken without his consent, for the use of the whole community of which he is a member, the constitution imperiously requires — not that the public shall decide whether he is entitled to any compensation, but that a just compensation shall be paid or secured; and that compensation implies the value, at least, of the thing taken. No citizen can be compelled to give his land to the public, without an equivalent. And what is that equivalent but the value, in money, of the land surrendered to public use? He may act unreasonably and unjustly, in an imaginable case, by insisting on pecuniary compensation, or in refusing to make the surrender without exacting the value of the property. But he has a right to insist on being paid the value of the thing taken from him, although he may be incidentally benefitted, with others, in the appropriation of it to public use. If however, claiming more than the value of the property taken, he seek indemnity for consequential inconvenience or injury, then the true question will be whether, upon a survey of all advantages, as well as disadvantages, which will be likely to result to him, the balance will be for or against him; and if ascertained to be in his favor, then, of course, he will be entitled to nothing for alleged damages for such inconvenience or injury, because the whole case being properly considered, in all its bearings, he will sustain no damage. Thus, and only thus, advantages and disadvantages may be compared and set off, the one against the other. And, in reference to the question we are now considering, this is the only constitutional sense of the term “advantage."
For property taken for public use, without the owner’s consent, the constitution entitles him to be paid, in money, the actual value of the property, and the actual or *34 supposed advantage to him, of the appropriation, cannot be set off against that value.
And, as money is “property,” we cannot doubt that—when a citizen’s land could not be taken by the public for its own use, without paying him the value of it —his money cannot be taken at all for the like purpose, without his consent, unless it be taken in the form of constitutional taxation; for, as there could be no other compensation than money for money, the act of restoring to one pocket that which was taken from another pocket would be idle and useless.
Wherefore, we are of the opinion that the assessment against the plaintiffs, was unauthorized by any principle of valid law, or of constitutional authority.
Judgment reversed.