CASE 34—PETITION EQUITY—FEBRUARY 7.

## City of Covington v. Worthington, &c.

APPEAL FROM KENTON CHANCERY COURT.

1. STREET IMPROVEMENTS.—Where private property is condemned by a city for a street, the property of the owner fronting on the street thus opened may be required to pay its due proportion of the cost of opening and improving the street, according to the number of feet fronting the street, just as other property in the square is taxed; and it is no objection to the tax thus imposed that it exceeds in amount the money value received for the property condemned. It can not, for that reason, be said that the property taken for public use has been taken without compensation, the owner being taxed upon his property that remains just as he would have been taxed if he had not owned the property taken.

2. SAME.—To entitle the city to enter upon the property thus taken for public use, it must pay to the owner the money value before entry. It can not use as a set-off the tax assessed against the remaining property of the owner, although that tax may exceed in amount the value of the property taken. Nor can the city deduct from the value any thing by reason of the benefits or advantages to accrue to the owner.

City of Covington v. Worthington, &c.

3. Same.—A city charter authorized the city council to levy a general tax upon the taxable property of the city to pay the cost of opening and establishing, or widening, any street or alley, and to collect the same as taxes were collected for general revenue purposes. By an amendment to the charter the council was empowered to assess a special tax upon the property fronting on the street improved to pay the cost of street improvements. *Held*—That the amendment was intended to provide the mode of assessment for the ordinary construction and improvement of the streets and alleys of the city, while the original provision of the charter now applies only where the ordinary mode of assessment would, in effect, confiscate the adjoining property. The city council can not arbitrarily adopt either mode it may choose.

W. A. BYRNE for appellant.

1. The rule is, that property abutting on a street and peculiarly benefited by its construction, shall be assessed in proportion to its frontage. (Dillon on Municipal Law, vol. 2, sec. 616; Cleveland v. Wick, 18. Ohio Stat., 303.)

2. When property is taken for the public use of building a street, it is not necessary to first make payment to the owner of the land taken. It is sufficient that it be secured to him. (Jackson v. Winn, 4 Litt., 323; Duncan v. Mayor of Louisville, 8 Bush, 105; Gashweller v. McIlvoy, 1 Mar., 85.)

3. The constitutional power to levy a tax for street building or street improvement being conceded, the manner of its apportionment is a matter of legislative discretion. (Griffin v. The Mayor of Brooklin, 4 N. Y., 419; Providence v. Billings, 4 Peters, 514; McCullough v. Maryland, 4 Wheaton, 428; Lexington v. McQuillan's Heirs, 9 Dana, 513; High on Injunctions, p. 835.)

WM. GOEBEL for appellees.

1. An act of the Legislature authorizing the city to condemn property for opening a street, and to assess the cost of condemnation upon abutting property which belongs to the person whose property is taken by condemnation is unconstitutional, because it is the taking of private property for public use without compensation. Money actually paid is the only constitutional equivalent for the property taken. (Sutton v. Louisville, 5 Dana, 28; Lexington v. McQuillan, 9 Dana, 18; Preston v. Rudd, 84 Ky.)

2. When property is taken by condemnation, the advantages accruing to the owner by reason of the improvement can not be set off against the value of the property condemned. (Jacob v. Louisville, 9 Dana, 114; Cooley on Constitutional Limitations, 702–4; Whitman v. Bastat R. R., 3 Allen, 133; Lexington v. Mayor of New York, 8 Wend., 85; Page v. Chicago R. R., 70 Ill., 324; Putnam v. Douglass,

6 Oregon, 328; Atlanta v. Green, 67 Ga., 386; Nicholas v. Bridge-
port, 23 Conn., 189; Cleveland v. Wick, 18 Ohio Stat., 304.)

3. If a part of an ordinance is void, another and essentially connected part
is also void, although the latter part standing alone would be valid.
(Dillon on Municipal Corporations, sec. 354; Municipality v. Morgan,
1 La. An., 111; Grant on Corporations, ———; Cooley on Constitu-
tional Limitations, 212.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This case is brought here to determine the validity
of an act of the Legislature amending the charter of
the city of Covington, approved March 5, 1876, and
also the validity of an ordinance passed in pursuance
of its provisions.

The city council, by a regular proceeding in the
mayor's court, condemned certain lots or parcels of
lots in the city for the purpose of extending Stewart
street from its present western terminus to Russell
street. The regularity of the condemnation proceed-
ings are not involved, and we must infer were such
as the law authorized; and if not, the parties whose
property has been condemned may appeal to the cir-
cuit court, and from that to this court as in other
cases.

The appellees were the owners of the ground, or a
part of it, taken by the city for the purpose contem-
plated, and owned land bordering on the improve-
ment; in fact, the appropriation of a part of these
lots left the balance bordering on the street.

The appellees instituted this action, enjoining the
city and the tax collector from collecting any tax
from them to pay for this improvement, and the
chancellor, upon the facts alleged in the petition, per-
petuated an injunction as to the tax, but held the pro-

ceedings valid in so far as the city sought to extend the street. The city appeals from the judgment perpetuating the injunction as to the collection of the tax, and the appellees prosecute a cross-appeal from that part of the judgment holding that the street was properly taken for the public use.

The ground upon which the chancellor sustained the injunction was, that the land of the appellees had been taken for public use without constitutional compensation.

It was alleged in the petition by the appellees that the special tax levied on the realty belonging to them and bordering on the street, was equal or amounted to more than the value of their realty taken for the street, and, therefore, their property had been taken without any compensation whatever. That the tax imposed is equal to, and as to one or two of the appellees exceeds, the value of the property taken, is conceded. The act of March 6, 1876, is as follows:

"Whenever the said city shall have acquired, by purchase or condemnation, any land or material for the opening, extending or widening of any street, etc., or part thereof within said city, its city council shall have the power to assess a special tax upon the lot or lots or parcels of land fronting or abutting on the said street, * * according to the front feet, for such distance along the same, not less than a square's length if the square is laid out, or not less than four hundred feet if there is no square, as they shall provide in their resolutions directing the purchase or condemnation, or they may assess according to valuation at the same on the city assessor's last book of assess-

ments, or they may assess any property benefited according to benefits. Said tax to be used to pay the cost and expense of such purchase or condemnation, or to reimburse the city treasury if said cost and expenses shall have been previously paid therefrom, * * and the proceedings of condemnation shall be regulated by the provisions of section 4, article 6 of the act of March 2, 1850."

Counsel for the appellee in this case insists that the exaction of this tax on the value of the property abutting on the street, as provided by the enactment of March, 1876, is substituting for compensation to the owners of the property taken, the benefits derived instead of money equivalent, as required by the Constitution. This view of the question presented arises from the fact that all taxation imposed in cases like this is based upon an actual or supposed local benefit, and, therefore, as a part of appellees' lots have been taken, the remaining realty out of which the street has been carved is taxed solely on account of the local benefits derived, and that when they pay this tax there is nothing left in the way of compensation but the enhanced value of their adjoining property or the peculiar benefits resulting from the improvement.

It is manifest that nothing can, under our Constitution, be deducted from the value of the property taken by way of condemnation. Neither the State, county or municipality can assert benefits or advantages to the citizen as a recompense for the appropriation of his property to the use of the public. He is entitled to its value in money, to be paid before entry. Recognizing this principle as the settled doctrine of this State, it is

proper to inquire whether or not the appellees in this case have been required to contribute more to the opening or extension of the street in question than their share of the public burden in the construction of such improvements. If those owning real estate within the city of Covington are liable to similar taxation for the purpose of opening, extending or improving streets, the taxation then being equal, is not open to constitutional objection. The fact that the appellees owned the land condemned, and are left with lots bordering on the extension, is no argument against the imposition of the burden. If the land taken had belonged to a stranger to this controversy, and purchased or condemned by the city for the street extension, the lots bordering upon it belonging to the appellees would be liable to taxation for its improvement. The law applicable to the entire municipality provides that such improvements shall be made by *a special tax upon the lots bordering on the improvement according to the number of front feet*, &c. It is universal in its application, and produces that equality recognized and settled as constitutional in the case of the City of Lexington v. McQuillan's heirs, 9 Dana, 513. The section of the charter of the city of Lexington was similar in almost every respect to the section we are considering, and the court then held the taxation was constitutional. Nearly all the legislation in this State with reference to such improvements has been based on that decision, and the courts of this and other States have recognized it as the leading case on the subject. There is one feature of the section of appellant's charter that was disapproved in the case cited. The city council is authorized *to assess*

any property benefited according to benefits, and, there-
fore, could impose a much greater burden upon the one
lot owner than the other, and, as in the case of McQuil-
lan's heirs, make one lot owner pay more than another,
because of the great expense incurred in improving the
street in front of the particular lot. This was con-
demned in the McQuillan case, and each lot owner re-
quired to contribute his due proportion of the cost
according to the extent of his ground on the street.
The special tax in this case makes each lot owner pay
in proportion to the number of feet fronting the street,
and this was proper. The tax imposed is neither arbi-
trary or unreasonable. If appellees had not owned
the ground taken, their part of the cost would have
been the same. They are not taxed to pay for the
ground appropriated, but to pay the cost of extension.
It inevitably follows that in this distribution of the
burden the tax collected from the appellees aids in
paying for the property condemned; and so of every
street or public highway that has been condemned
as such for public use. If a county road is established,
and the land of A is condemned for that purpose, A is
compelled, in discharging his part of the county levy,
to assume and pay his proportion of the value of his
own land. The expense is charged to the entire county,
and in this way all contribute, including the citizen
whose land has been condemned. As to cities, as is
usual in this State, each square improves its streets by
taxing the property by the front foot to pay for the
improvement. This is held to produce equality, and
the fact that the party sought to be taxed was the
owner of the land condemned can make no difference.

If no tax can be imposed in such a case, then you extend the improvement, and release him from all costs, when charging others for like improvements who happen to own the land adjoining, but not the land condemned.

In the case of Sutton's heirs v. City of Louisville, 5 Dana, 28, the jury, in determining the value of the land for the street, was authorized to set off the advantages and benefits to the owner by reason of the improvement against the value of the land, and it was held unconstitutional. In this case the appellees have been given the value of their land without reference to the advantages to be derived from the street extension, and have been taxed as all other owners of real estate situate in the city are taxed. The tax may exceed the value of the land taken, and is imposed because of local benefits derived, but producing that equality in the common burden for like improvements it is constitutional taxation.

In the case of City of Lexington v. McQuillan's heirs, 9 Dana, 513, it is said "that whenever the property of the citizen is taken from him by the sovereign law, and appropriated without his consent to the benefit of the public, an exaction should not be considered as a tax, unless *similar contribution* be made by that public itself, or shall be exacted rather by the same public law from such constituent members of the same community generally as own the same kind of property." Where the same kind of property is subjected alike to the same common burden, the taxation, if otherwise unobjectionable, has always been sustained.

We are unable to determine from the pleadings in this case (there being nothing but the petition) whether the moneyed value of the land condemned has been paid to the appellees or not, or whether the city has entered upon the premises condemned for the purpose of making the improvement. We infer from the petition that the appellees are assailing both the ordinance and charter of the appellant, and that no entry has been made or money paid, but an injunction obtained with a view of delaying all proceedings until the constitutional question raised is determined. It is plain that the city should pay or offer, to pay the appellees the money value of their land as fixed by the verdict and judgment before entering on the premises.

This is a condition precedent to the right of entry, and when paid, the assessment may be made as provided by the charter. While the assessment may equal the value of the property taken, it affords no reason for applying the doctrine of set off in a case like this. The owner must be paid his money, and then required to pay his part of the common burden.

The judgment below is reversed on the original, and affirmed on the cross-appeal, and remanded for proceedings consistent with this opinion.

---

To a petition for rehearing, filed by counsel for appellees, Judge Pryor delivered the following response of the court:

The act of 1871, approved on the 21st of March, was not referred to on the original hearing. The provisions of that act authorized the council, whenever the city of

Covington shall have acquired, by purchase or condemnation, any land or materials for the purpose of opening and establishing, or of widening, throughout the whole or a part of its length, any street, alley, market-space, &c., to ascertain the damages, and collect the same in the manner that other general city taxes are collected upon such property and things within the city as are taxable for general revenue purposes, &c. This act authorized the imposition of the burden on the owner of property within the city without regard to the locality of the improvements and the benefits to be derived by the adjoining owners. Then came along the act of March 6, 1876, by which, for such improvements as streets and alleys, the council was empowered to assess a special tax on the land fronting upon the street according to front feet, &c. This amendment to the city charter changed the mode of paying for such improvements, and created a new system in compelling the owners of adjoining lands to pay by reason of the benefits received. The amendment of March 6, 1876, was intended to make this radical change for the reason that it provides the mode of imposing the burden, the manner of collection, and all the incidental steps necessary to the acquisition of the property and the making of the improvement. It is argued that as the act of March 21, 1871, is still in force, the council may compel, by reason of its provisions, the owners of the adjoining land who have been specially assessed in this case to contribute with the tax-payers generally to improve a street on the next square, when the adjoining property is as much benefited as that upon which the special assessment has been made. In

other words, that the council may adopt either mode of assessment regarding the benefits in the one case and disregarding them in the other. We do not so construe the two acts or the powers conferred by either on the city council. The effect of the act of 1876 is to change the mode of assessment in such cases, and has been adopted by the city council, and such was the legislative purpose. We do not concur with counsel for the city that the city council may adopt either mode, for if these appellees were taxed to pay for a like improvement on adjacent streets, when the benefits were alike or approximately so, the act of the council would be in direct violation of the organic law. But it does not appear that this has been or is being done by the city. What force has the act of 1871? It has only this: Cases may arise, and often do in the growth of cities, that streets and alleys are required to be improved, when to do so would, in effect, confiscate the adjoining property. The necessities of the population may demand it, or the improvement of such a character as would suggest at once that no mere local burden should be imposed.

To this extent the act of 1871 stands unaffected by the amendment of 1876, this last amendment applying and providing the mode for the ordinary construction and improvement of the streets of the city.

This court held at the present term in the case of Frantz v. Jacob, * that although the ordinary mode of making such improvements required, by reason of the

_____

· * See page 525 of this volume, The opinion referred to was filed after the opinion in this case was filed, but before the response to petition for rehearing was filed.

system adopted by the city for that purpose, that the adjacent property should pay for the improvement made, still the power of the city remained to make an improvement demanded by the necessities of its population, when, by taxing the adjacent property to pay for it, would, in effect, amount to confiscation. While the council is to judge of these necessities, it must not be an exercise of mere arbitrary power, for when the ordinary mode can be pursued, it must be followed, else that inequality will exist of which the tax-payer can complain, and for which relief will be granted him by the chancellor. The petition is overruled.