### Ex Parte W. C. Woods.

No. 4134. Decided February 19, 1908.

**1.—Occupation Tax—Constitutional Law—Non-Intoxicants—Local Option Territory.**

The Constitution of the State of Texas, section 2, article 8, provides that all occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax.

**2.—Same—Bill of Rights—Equal Rights.**

Section 3 of the bill of rights, Constitution of Texas, provides that all freemen, when they form a social compact, have equal rights, and no man or set of men is entitled to exclusive separate public emoluments or privileges but in consideration of public services.

**3.—Same—Rule of Construction—Legislative Will.**

The prime object of all rules of interpretation is to ascertain the will and intent of the lawmaker. This may be oftenest done, and usually can best be done by giving effect to the language used, considered and construed in its ordinary sense; and where the meaning is obvious and an exception is made in precise terms the courts are neither required nor permitted to speculate as to what the Legislature meant.

**4.—Same—Legislative Construction.**

It is also a cardinal rule of construction that the meaning of one portion of an act may be aided by other provisions contained in the same act, but where there is no kindred legislation and the exception is contained in the first section of the act, and there is no reference thereto in any other portion of the act, the construction must be of the act itself as it stands written on the statute books.

**5.—Same—Interpolations.**

Where the language used is unambiguous, the court will not interpolate other words, not used by the Legislature, and strike out and down the clear and precise words used, of such ordinary signification as to rebut the presumption that they were used either ignorantly or inadvertently by the Legislature and were not meant to include an exemption of a certain class of taxpayers.

**6.—Same—Statutes Construed.**

The safest rule of interpretation is furnished by our own civil and criminal statutes as construed by our appellate courts, that when words used in the statutes are free from ambiguity or doubt, etc., there is no occasion to look elsewhere.

**7.—Same—Occupation Tax—Non-Intoxicating Malt Liquors.**

The Thirtieth Legislature undertook to levy and did levy an occupation tax on non-intoxicating malt liquors in local option territory, on all firms, persons, associations of persons and corporations, selling at retail non-intoxicating malt liquors; providing that said law should not apply to regular druggists or pharmacists, who as such keep for sale as a part of a regular drug store such proprietary remedies as malt extract, malt medicine and malt and iron, used exclusively as medicines, and not as a beverage. Held, that such act is unconstitutional in that it strikes down the guarantee of the Constitution that taxes shall be equal and uniform.

**8.—Same—Police Regulation—Tax Law—Local Option.**

Section 1 of the Act of the Thirtieth Legislature, page 212, is a tax law, its sole and only purpose being to levy a tax on the occupation named, and to provide for its collection, and is not a police regulation; but at any event, is discriminatory legislation and violative of the bill of rights; nor can it be justified as an aid to local option.

**9.—Same—Constitutional Guarantees—Statutes.**

The Constitution is the supreme law, and it is as important to the citizen that his rights are not invaded in violation of constitutional guarantees, as it is that an act of the Legislature should be upheld.

From Orange County.

Original application for habeas corpus for a release from arrest for unlawfully pursuing an occupation without license, under chapter 112, of the Act of the Thirtieth Legislature, levying a tax on non-intoxicating liquor in local option territory and exempting therefrom druggists and pharmacists.

The opinion states the case.

*T. H. McGregor, J. J. Eckford, O. L. Stribling* and *Bisland & Bruce,* for relator. Cited cases in the opinion.

Such occupation being harmless and useful is not the subject of police control and an attempt on the part of the Legislature to regulate it is an invasion of the rights of the citizen, and for this reason is void. But even if it were the subject of control, still the right to control or regulate an innocent occupation, does not include the right or power to destroy such occupation, as is done in this act: Brown v. State, 38 Texas Crim. Rep., 295; Ex parte Hutchinson, 117 Fed. Rep., 949; Lyon v. Cooper, 18 Pac. Rep., 296; Philadelphia v. Western Union, 40 Fed. Rep., 615; Hirschfield v. City of Dallas, 15 S. W. Rep., 124; State v. Wyatt, 55 S. W. Rep., 627; State v. Bengsch, 70 S. W. Rep., 710; Chicago v. Netcher, 183 Ill., 104.

On question of discrimnatory legislation: Davis v. Clark, 106 Pa., 384; Kennegan v. Force, 68 N. Y., 381; Devine v. Com., 81 Ill., 590; Ex parte Bains, 45 S. W. Rep., 24; Snearly v. State, 52 S. W. Rep., 547; Ex parte Massey, 49 Texas Crim. Rep., 60, 15 Texas Ct. Rep., 706; State v. Swischer, 17 Texas, 441; San Antonio v. Jones, 28 Texas, 19.

*F. J. McCord,* Assistant Attorney-General, and *Looney & Clark,* for the State.—On question of uniformity of taxation and construction of Act of the Legislature: Brooks v. Hicks, 20 Texas, 667; Conor v. Vaughn, 12 Texas, 402; United States v. Starn, 5 Blachf., 512; Nichold v. Holliday, 27 Wisconsin, 406; Panner v. State, 40 Ala., 21; Walker v. State, 7 Texas Crim. App., 245; 26 Am. Eng. Ency. of Law (2d ed.), p. 654; Ex parte Gregory, 20 Texas Crim. App., 210.

RAMSEY, JUDGE.—On July 25, 1907, application was made by relator for a writ of habeas corpus to the Honorable W. L. Davidson, Presiding Judge of this court. The writ was granted and the application made returnable before the court at the Tyler term of last year. The matter was submitted at Tyler, but in view of the absence of Judge Davidson at the time of the submission and the recent accession of the writer to the bench, the court requested oral argument on the important matters involved.

The case has been ably and well briefed on both sides and thoroughly presented on oral argument. Counsel for the State make a clear statement of the several matters involved in the application, and for convenience and as conducive to clearness, we adopt their classification of the propositions urged by the several attorneys for the applicant. As grounds for the discharge of the relator the following propositions are urged:

1. It is urged that the act in question is void because in conflict with section 35, article 3, of the Constitution, in that it contains "more than one subject."

2. That the act is void, because in conflict with section 20, article 16, of the Constitution (local option clause) in that, (a) it attempts to delegate to the people the power to levy a tax on the liquor business; (b) it attempts to enlarge the scope of the local option law; (c) the Legislature is without power to enact any prohibitory law with reference to the sale of liquor, except as provided by section 20, of article 16, of the Constitution.

3. That the act is void, because in conflict with section 2, of article 8, of the Constitution, in that the (alleged) tax is not "equal and uniform" within the meaning of the Constitution.

4. That the act is void because the license tax is prohibitory, the penalties cruel and unusual and prohibited by section 13, of article 1, of the Constitution; and being so enormous operate to deter the citizen from invoking the protection of the courts, and thereby deny due process of law, as prohibited by section 19, of article 1, of the Constitution.

5. That the act is unconstitutional and void because the traffic regulated being non-intoxicating liquors, a harmless business, is taken out of the domain of the police powers of the Legislature.

6. That the act is in conflict with section 28, of article 1, and section 56, of article 3, of the Constitution, in other words, that the act is a local or special law, and for that reason is void.

It will be perceived that all the grounds urged as a basis for the discharge of the relator, raise constitutional questions. If the act under which he is charged is in contravention of the Constitution of this State, and violative of same, and we shall hold that either of the propositions above stated are well taken, then it must follow that the relator is entitled to his discharge. The Thirtieth Legislature, page 212, undertook to levy and did levy an occupation tax on non-intoxicating malt liquors. By section 1 of this act it is provided, as follows: "Section 1. In all counties, justices' precincts, towns, cities or other subdivisions of a county where qualified voters thereof have, by a majority vote, determined that the sale of intoxicating liquors shall be prohibited therein, there is hereby levied upon all firms, persons, associations of persons and corporations, selling at retail non-intoxicating malt liquors, such as 'Uno,' 'Ino,' 'Frosty,' 'Tip-top,' and 'Teetotle,' and *all other such liquors* an annual State tax of $2,000, and counties, also incorporated cities and towns where such sales are made, may each levy an annual tax of not exceeding $1,000 upon all such persons, firms or corporations; provided, that this section *shall not apply* to regular druggists or pharmacists, who as such, keep for sale as a part of a regular drug stock, such proprietary remedies as 'malt extract,' 'malt medicine,' and 'malt and iron' used exclusively as medicine and not as a beverage."

Among the contentions of relator is, that this section is in contravention of section 2, article 8, of the Constitution, which in respect to occupation taxes, reads as follows: "All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax."

It is also contended by counsel for relator, that section 3 of the Bill of Rights is important to be considered in connection with this contention, and that a proper construction of section 2 of article 8 is aided by reference to section 3 of the Bill of Rights. This section is as follows: "All free men, when they form a social compact, have equal rights and no man or set of men, is entitled to exclusive separate public emoluments or privileges but in consideration of public services."

This court has seemed, in decisions heretofore, to have esteemed this section of the Bill of Rights as having some application to the uniformity, or equality of taxing measures. Ex parte Jones, 38Texas Crim. Rep,. 482. The Constitution preceding that under which we are now operating, contained the following provision: "Taxation shall be equal and uniform throughout the State," whereas the present Constitution provides: "All occupation taxes shall be equal and uniform, upon the same class of subjects within the limits of the authority levying the tax." This has been held (Fahey v. State, 27 Texas Crim. App., 146), as applying to the whole State, as to legislative authority, and that of a county, city, or town as their respective boundaries. So that the provision of the Constitution, here in question, in fact provides that taxes shall be equal and uniform throughout the State, as applied to all taxes levied for State use by the Legislature. If the contention is true, that

the act of the Legislature complained of makes an exception in favor of druggists and pharmacists, and if it be true as contended by relator, that the tax levied is not equal and uniform throughout the State upon the same class of subjects, then the tax levied is without authority of law, in contravention of the Constitution, and the relator is entitled to be discharged. This is not a new question in this State. This matter has received consideration, both by this court and by the Supreme Court. Probably the most notable case in which this provision of the Constitution has received construction was, the case of the Pullman Palace Car Company v. State of Texas, 64 Texas, 274. In that case the State sought to enforce an occupation tax of $2 a mile under that part of the act of March 24, 1881, authorizing the collection from every person, firm, etc., owning or running any palace car, sleeping or dining cars, *not owned by the railway company,* of any railroad in this State.

Touching this matter · and the contention that the act was invalid in that the occupation tax sought to be laid was not equal and uniform, the court say: "The inquiry arises whether a law which thus imposes a tax on others than railway companies, for the pursuit of this business, while it exempts railway companies therefrom does not violate the provisions of the Constitution referred to. That the tax contemplated by the act is an occupation tax is too clear for discussion. Does the business done by persons or corporations owning such cars and running them on the roads of others, or the business done by persons not owning but running such cars on the roads of others, and business done by railway companies on their own roads with such cars, embrace the same class of subjects of taxation? The subject of taxation is the thing or business done; the occupation followed for and on account of which the tax is imposed on persons and corporations that pursue it. The business or occupation of the owners of such cars running them on the roads of others, and of those who are not owners but run such cars on the roads of others, in so far as the particular occupation for which the tax is imposed is concerned, in no essential differs from that pursued by a railway company that runs its own cars of the same kind for the same purpose over its own road. The same acts and facts make the occupation in either case, and it looks to the same end and purpose. That a railway company may pursue another business or occupation than that taxed by the law in question cannot affect the question whether a business which it does pursue is the subject of taxation for the pursuit of which others are taxed; nor can the fact that it owns other property, without which the occupation in a given case could not be pursued affect the question. There are, however, some occupations taxed which are very kindred in the elements which make them up, i. e., the acts and things which constitute the occupation taxed. Here the facts which constitute the occupation are in part the same, but not entirely so; and hence are held to belong to different classes of occupations and not required to pay the same amount of tax. There is no act or fact entering into the occupation of running such cars as are mentioned

in the statute, over the road of another, which does not enter into the occupation of the road owner who runs over his own road the same kind of cars for the same uses and purposes, from which the road owner can be withdrawn from the class on which the statute imposes the tax. If the things done constitute in one person or corporation the taxed occupation, no one doing the same things can be omitted from the class taxed, without a violation of the constitutional provisions; even though the omitted or excepted person or corporation may do more or others things than are necessary to constitute the taxed occupation, and though that done in excess may, within itself constitute a distinct occupation subject to taxation, however kindred in nature the occupation may be. The Legislature may classify subjects of taxation, and these classifications may, as they will, be more or less arbitrary; but when the classification is made, all must be subjected to the payment of the tax imposed, who, by the existence of the facts on which the classification is based, fall within it, unless exempted under some other constitutional provision. Nor can the constitutional requirement, in reference to occupation taxes, be evaded, or its application rendered unnecessary, by the fact that the person or corporation pursuing the occupation pays an income tax; nor by the fact that an occupation tax is paid upon a business kindred to that on account of which the given occupation tax is claimed. Kelly v. Dwyer, 7 Lea., 180; Burch v. The Mayor, 42 Ga., 596; Hirsh v. Commonwealth, 21 Gratt., 785; Woolman v. State, 2 Swan (Tenn.), 353; State v. Stephens, 4 Texas, 137. It is suggested, if the statute is violative of the constitutional provision referred to, that it should not be held void in so far as it imposes the tax, but that those who by its terms are exempted from its operation should be held subject to its provisions. The Legislature alone can impose taxes, and determine what occupations shall be taxed; and when it imposes an occupation tax and expressly declares that given persons or corporations shall not be subjected to it, the courts have no power to declare that they shall; but they have power to declare that the act by which such a discrimination is made is inoperative upon those upon whom the burden is attempted to be imposed, because violative of the rule requiring equality and uniformity."

A similar matter was considered by this court in the case of Ex parte Jones, 38 Texas Crim. Rep., 482, 43 S. W., Rep., 513. The applicant in that case had been arrested under an Act of the Twenty-fifth Legislature, requiring the payment of occupation tax levied on peddlers, and was attacked for the reason that it contained the proviso: "That all ex-Confederates and ex-Federal soldiers, who, from old age, or other cause, may be incapacitated to do and perform manual labor and who are actual residents of the State of Texas, and are not inmates of any soldiers' home, or drawing any pension from the United States or State government, be and are hereby exempt from the payment of any such peddlers' occupation tax." In pass-

ing upon this question, this court said: "Section 3 of our Bill of Rights would appear to inhibit any class legislation, and is as follows: 'Section 3. All free men when they form a social compact have equal rights, and no man or set of men is entitled to exclusive separate public emoluments or privileges, but in consideration of public services.' A proper construction of these constitutional provisions, together with an application of same to the occupation tax provision before quoted, would appear to settle this question in favor of the applicant; for unquestionably the act exonerates and exempts from taxation, and constitutes certain classes therein named, privileged classes, who are authorized to pursue the occupation of peddling without the payment of any tax or the procurement of any license. This is obviously taxation which is not equal or uniform. However, this is not a new question in this State. In Pullman Palace Car Co. v. State, 64 Texas, 274, almost this exact question came before our Supreme Court for decision. That was a case in which suit was brought by the State of Texas against the Pullman Palace Car Company, claiming an occupation tax for running and operating Pullman palace cars on lines of railroads in the State of Texas, said cars not being owned by any of the railroad companies operating the railroad. The tax act under which this recovery was sought laid an occupatoin tax upon all persons or corporations operating Pullman palace cars on railroads in the State of Texas, except persons or corporations who owned said railroad; and the court held that this exemption rendered the law unconstitutional and void. Among other things, Judge Stayton, who rendered that opinion, said: 'If the things done constitute in one person or corporation the taxed occupation, no one doing the same things can be omitted from the class taxed without a violation of the constitutional provisions, even though the omitted or excepted person or corporation may do more or other things than are necessary to constitute the taxed occupation, and though that done in excess may within itself constitute a distinct occupation subject to taxation, however kindred in nature the occupation may be. The Legislature may classify subjects of taxation and these classifications may be, as they will be, more or less arbitrary; but, when the classification is made, all must be subjected to the payment of the tax imposed who by the existence of the facts on which the classification is based, fall within it, unless exempted under some other constitutional provision.' And to the same effect, see also Cooley Tax'n (Ed. 1879), pages 128, 130, 138, 139, 153; 1 Desty Tax'n, pages 94, 95, 122, 191, 192, 193; City of New Orleans v. Home Mut. Ins. Co., 23 La. Ann., 449; Sims v. Parish of Jackson, 22 La. Ann., 440; Livingston v. City Council of Albany, 41 Ga., 21; Lin Sing v. Washburn, 20 Cal., 534; Sutton's Heirs v. City of Louisville, 5 Dana, 28."

A similar question came before the court later, in the case of Ex parte Overstreet, 39 Texas Crim. Rep., 474, 46 S. W. Rep., 825, in which case the opinion of the court was delivered by Judge Hurt, then its presiding judge. In that case, the relator had been arrested for pur-

suing the occupation of peddling buggies without first obtaining a
license therefor. The contention of relator in that case was that the
law under which he was arrested was unconstitutional, in that it
discriminates between persons engaged in the same character of busi-
ness, and the same was invalid by reason of an exception and dis-
crimination contained in the act. The exception which it was con-
tended rendered the act unconstitutional was, as follows: "A mer-
chant who pays an occupation tax as required by this article,
shall not be required to· pay this special tax for selling articles
named in this paragraph, when sold in his place of business, or in the
county in which his place of business is located." In discussing this
question, the court said: "Constitution, article 8, paragraph 1, pro-
vides: 'Taxation shall be equal and uniform * * *. It (the
Legislature) may also impose occupation taxes both upon natural per-
sons and upon corporations, other than municipal, doing business in this
State.' Section 2: 'All occupation taxes shall be equal and uniform
upon the same class of subjects within the limits of the authority levy-
ing the tax. But the Legislature may by general laws exempt from tax-
ation public property used for public purposes,' etc. It may be con-
tended that as the merchant may not only peddle goods, but also engage
in the regular mercantile business, therefore the pursuits are not in
conflict, and that they are not the same occupation. This proposition
is met by the opinion of Judge Stayton in Pullman Palace Car Co. v.
State, 64 Texas, 274. This case settles beyond any question the issue
involved in the case in hand. Under the law, a merchant can sell any
character of merchandise, peddle buggies, etc., in his county; in fact,
engage in any mercantile business and peddle the articles named in
subdivision 40, without paying as much occupation tax as the peddler of
a buggy, washing machine, etc. Now, we cannot comprehend how the
fact that he could engage in the mercantile business to its fullest extent,
as well as the peddling of these articles, without paying as much tax as
the relator, would relieve the case of the constitutional prohibition that
'all occupation taxes shall be equal and uniform upon the same class
of subjects within the limits of the authority levying the tax.' "

The same principle, in substance, was reaffirmed in the cases of Po-
teet v. State, 41 Texas Crim. Rep., 268, 53 S. W. Rep., 869; Rainey
v. State, 41 Texas Crim. Rep., 254, 53 S. W. Rep., 882. The re-
lator in the Poteet case had been convicted of pursuing the occu-
pation of a cotton buyer without obtaining license for that purpose.
An Act of the Twenty-fifth Legislature had imposed an occupation tax
on cotton buyers, but contained the following provision, which it was
contended rendered the proposed tax unconstitutional: "A merchant
who pays an occupation tax, as herein prescribed, shall not be consid-
ered a cotton buyer, or buyer of wool or hides." In discussing this ques-
tion, the court there said: "Under the provisions of our Constitution
the tax must be equal and uniform, and the Legislature has no author-
ity to exempt a merchant, or any other class from the payment of this

tax, when it is imposed upon all others. It is no answer that the party pays a tax as a merchant. The two callings are different and distinct. If the Legislature has the authority to exempt a merchant from the payment of the tax, so it would any other class of citizens, and thus impose a burden upon one class from which the others are exempt, and for the same calling or pursuit."

The Rainey case was a conviction under the same statute and the holding is practically identical with that in Poteet, supra, and is cited for the reason, mainly, that it contains an express affirmation of the rule laid down in Ex parte Overstreet, supra, as well as the case of the Pullman Palace Car Co. v. State, 64 Texas, 279.

The case of Hoefling v. City of San Antonio, 85 Texas, 228, by our Supreme Court is to the same effect. And so far as we have been able to discover, there is no dissent in the authorities in this State from the proposition contained in the above cited cases. It is contended, however, by counsel for the State, that under a proper construction of the statute in question, there is no exception and that the Legislature did not intend to except any one from its operation. The presentation of this view by counsel for the State, was very forceful and is as strongly stated as it well could be.

The provision which it is claimed has the effect to make void the act is, as follows: "Provided that this section shall not apply to regular druggists, or pharmacists, who, as such, keep for sale as a part of a regular drug stock, such proprietary medicines, as 'malt extract,' 'malt medicine' and 'malt and iron' used exclusively as medicine and not as a beverage."

On this question counsel, in their brief say: "To say that druggists are exempt from the tax imposed, is to render meaningless and surplusage, all reference to these proprietary remedies; but to construe the act as meaning that druggists should not be considered as coming within the provisions of the act by making sale of these remedies in the manner as therein stated, is to give meaning to all the language used, to save the bill unimpaired, and to accomplish the purpose of the legislation. We admit that the language employed is not as apt to express this idea as could have been employed, but that this was the legislative intent there can be but little doubt from the language used and the purpose of the act, and being so, the law should be construed so as to give it effect. Our position is, that the provision was intended to mean as if it read 'provided that this section shall not prevent the sale by regular druggists or pharmacists, who as such, keep for sale as a part of a regular drug stock, of such proprietary remedies as "malt extract," "malt medicine" and "malt and iron" used exclusively as medicine and not as a beverage.' This construction would change the phrase 'apply to' and interpolate in lieu the phrase 'prevent the sale by,' and also interpolate the word 'of' between the words 'stock' and 'such.' This court is authorized, and it would seem from the authorities to be its duty, when the intention of the Legislature can be ascertained with reasonable cer-

tainty, to alter and supply words in the statute so as to give it effect."

For a proper determination of the question here presented, we must refer to our State Constitution. The matter involves a proper construction of it. If, when so construed, there is no exception, then relator should be held. If there is an exception, and if the law violates the constitutional provision that occupation taxes must be equal and uniform, it must follow that the relator should be discharged. "A cardinal rule in dealing with written instruments is, that they are to receive an unvarying interpretation, and that their practical construction is to be uniform. A constitution is not to be made to mean one thing at one time, and another at some subsequent time when the circumstances may have so changed as perhaps to make a different rule in the case seem desirable. A principal share of the benefit expected from written constitutions would be lost if the rules they established were so flexible as to bend to circumstances or be modified by public opinion. It is with special reference to the varying modes of public opinion, and with a view to putting the fundamentals of government beyond their control, that these instruments are framed; and there can be no such steady and imperceptible change in their rules as inheres in the principles of the common law. Those beneficent maxims of the common law which guard person and property have grown and expanded until they mean vastly more to us than they did to our ancestors, and are more minute, particular, and pervading in their protections; and we may confidently look forward in the future to still further modifications in the direction of improvement. Public sentiment and action effect such changes, and the courts recognize them; but a court or legislature which should allow a change in public sentiment to influence it in the intention of its founders, would be justly chargeable with reckless disregard of official oath and public duty; and if its course could become a precedent, those instruments would be of little avail. . The violence of public passion is quite as likely to be in the direction of oppression as in any other; and the necessity for bills of rights in our fundamental laws lies mainly in the danger that the Legislature will be influenced, by temporary excitements and passions among the people, to adopt oppressive enactments. What a court is to do, therefore, is *to declare the law as written,* leaving it to the people themselves to make such changes as new circumstances may require. The meaning of the Constitution is fixed when it is adopted, and it is not different at any subsequent time when a court has occasion to pass upon it." Cooley's Const. Limitations, 6th ed., pages 68–69.

The Constitution governs. It is literally thus, a pillar of cloud by day, and by night a pillar of fire; to give us light and with us, it is "to go by day and by night."

If we should, or, are at liberty to construe the act in question so as to hold that there is no exemption contained in it, it would manifestly follow that the objection which we are considering would not apply. We do not believe, however, that we could or should so hold. There are

many rules for the construction of statutes. It would not be denied that the prime object of all rules for interpretation is to ascertain the will and intent of the law maker. This may oftenest be done, and usually can best be done, by giving effect to the language used, considered and construed in its ordinary sense. Of course, we recognize that we are not imperatively required to give the language employed its literal meaning, if in the light of the entire law, previous legislation, or the evident purpose and intent of the Legislature; a different construction should fairly be placed on the language used. More literalism when it leads to absurdity, should, of course, be rejected, but where in the light of the entire act, taking every part of it into consideration, the language is clear, the meaning obvious and an exception is made in precise terms, we are neither required nor permitted to speculate as to what the Legislature meant where such meaning does not appear in the language used, nor are we at liberty to search for a meaning not apparent on the face of the act to be construed. Now, it should be remembered that the act in question is not an amendment of any prior act or existing statute, but for the first time levies a heavy tax upon non-intoxicating malt liquors. Therefore, in construing the act it is not possible to do so with reference to any existing, or prior legislation, but the construction must be of the act itself as it stands written on the statute book. Nor, is here any kindred legislation to which the act is referable, or that might or could aid us in its proper interpretation. It is a cardinal rule of construction that the meaning of one portion of an act may be aided by other provisions contained in the same act, and that that construction should be placed upon such legislation as would give the whole effect. That cannot apply in this case for the reason that the exception is contained in the first section of the act in question, and there is no reference thereto in any other portion of the act, nor anything in it which could aid us in the construction of the portion here under investigation. The exception, if there be an exception, is found in the first section of the act in question. There is no language used anywhere else in said act which could aid us in construing the intent and purpose of the alleged exemption. The tax levied is upon non-intoxicating malt liquors, including certain liquors specifically named and all other *such* liquors. Now, in the light of this tax so levied, we are confronted with an exception which provides that this section, that is, section 1, defining the occupation to be taxed, shall *not apply* to regular druggists or pharmacists, who, as such keep for sale, as a part of a regular drug stock, such proprietary remedies as malt extract, malt medicine and malt and iron, used exclusively as medicine and not as a beverage.

Now the learned counsel for the State says that this article should be construed as if it read as follows: "Provided that this section shall not *prevent the sale by* regular druggists or pharmacists, who as such, keep for sale as a part of a regular drug stock *of* such proprietary remedies as malt extract, malt medicine, and malt and iron used exclu-

sively as medicine and not as a beverage." In other words, to uphold the law we should be required to strike out in the act in question, the term "shall not apply," and substitute therefor the words "shall not prevent the sale by"; and in addition to that, interpolate the word "of" between the words "stock" and "such." While we recognize the duty resting upon us to search diligently for the legislative intent in the language used, so that we may find it, and having found it, give it effect, we do not believe that we should declare the unambiguous language used in this section meaningless, strike out and strike down the clear and precise words used of such ordinary signification as to rebut the presumption that they were used either ignorantly or inadvertently by the Legislature, and interpolate words not used by them and having made the elision in the one case and the interpolation in the other, with such alteration and substitution, undertake to give the act effect. This act of the Legislature not only levies a tax but makes provision for the arrest and conviction of persons engaged in the business named without the payment of such tax and provides for punishment of offenders against same by a fine of not less than the amount of tax due and not more than double the sum. As a rule for the guidance of the courts in construing such statutes, it is said in Ex parte Overstreet above quoted, that one test is, and it seems to be both an infallible and a just test, could the person claimed to be excepted, be convicted under such statute? In the Overstreet case, Judge Hurt uses this language: "Let us suppose that the merchant was indicted for peddling buggies without a peddler's license and the proof showed that he had obtained a merchant's license, but that he had peddled the buggies within the county in which his business was situated. Under such a state of facts, could he be convicted of pursuing the occupation of a peddler under subdivision 40 without license? He evidently could not because the proviso expressly authorizes him to sell buggies within the county of his place of business."

Now, under this act, let us suppose that a druggist who has not paid the tax, is found engaged in the sale of malt liquors, either as proprietary medicines or under the guise of proprietary medicines; either those named in the exception or others of the same character; or, for that matter engaged in selling the very articles upon a sale of which at retail, the tax has been levied. He is indicted and brought before the courts of his country and convicted, and an appeal is prosecuted to this court. Would we be justified by any rule known among men in upholding such a conviction in the light of the statute which specifically and in terms provides, that the section alleged to have been violated shall not apply to him. In his defense, he would point us to that portion of section 1 of the act levying a tax, which says: "Provided that this section shall not apply to regular druggists, or pharmacists, who, as such, keep for sale as a part of a regular drug stock, such proprietary remedies as malt extract, malt medicine and malt and iron, used exclusively as a medicine and not as a beverage," and invoke this provision

as a shield and a defense. Would we be justified in saying, that while the exception is clear and explicit in its terms, that the Legislature did not say what they meant, or mean what they said, and that we might reach out and punish him on some theory or suggestion that we are at liberty to strike out the words "shall not apply to," and insert the phrase "shall not prevent the sale by," and interpolate "of" between the words "stock" and "such"? We do not think so, but are clear that such exception, when invoked and by whomsoever invoked, must be and should be sustained by this court.

But it is urged with great force and much plausibility by counsel for the State, that if the law in question·cannot be upheld as a tax law, that it may be upheld and should be upheld as a police regulation and not treated by the well known tests applicable to taxing laws, and cites many authorities to sustain this proposition. We do not think this contention sound for several reasons. In the first place, the act in question is a tax law. As it appears in the published volume of the General Laws of the Thirtieth Legislature, its title is "Taxes—providing occupation tax on dealers in Malt Liquors." The sole and only effect of the law, its sole and only purpose is to levy a tax on the occupation named, and to provide for its due enforcement and collection. And to say that it may be treated as a mere matter of regulation is to do violence to the law itself, and to nullify and emasculate the same. Nor, do we believe, with all possible respect to counsel, that this view is important in any event, for that, if there is *in fact* a discrimination and the legislation is violative of the bill of rights, and in the face of the Constitution, and that under whatever guise or under whatever pretext attempted, the result should not be different.

But it may be contended that we could and should uphold the contention of the State on the ground that the exception was not intended to apply to persons, but only to permit by legislative enactment, the sale of certain proprietary remedies as medicines and not as a beverage, and this without reference to the distinctive occupation of those offering same for sale. That it would be within the authority of the Legislature to have exempted the sale of certain proprietary remedies as medicines if the exemptions had applied to all persons without discrimination, can admit of no doubt; but the Legislature, as we view it, has not done this. If such had been their intention, the specific naming of druggists and pharmacists was both idle and foolish.

Our own statutes and decisions furnish the safest rules for judicial interpretation. The first provision in numerical order and importance laid down in article 3268 of the Revised Civil Statutes is as follows: "The following rules shall govern in the construction of all civil statutory enactments: 1. The ordinary signification shall be applied to words except words of art or words connected with a particular trade or subject matter." The very first article of our Penal Code reads, as follows: "The design of enacting this code is to define in *plain language* every offense against the laws of this State, and affix to each

offense its proper punishment." Again, it is provided in article 5 of the Penal Code, that "In the construction of this code each general provision shall be controlled by a special provision on the same subject, if there be a conflict." Article 6 of the Penal Code is as follows: "Wherever it appears that a provision of the penal law is so indefinitely framed or of such doubtful construction that it cannot be understood, either from the *language* in which it is expressed, or from some other *written* law of the State, such penal law shall be regarded as wholly inoperative." In article 9 of the Penal Code, it is said, among other things, that "No person shall be punished for an offense which is not made penal by the plain import of the *words* of a law." These articles have received frequent construction by this court and our Supreme Court, and the rule is almost uniformly laid down that "if the words used in the statute are free from ambiguity or doubt, and express plainly and clearly the intent according to the most natural import of the language, there is no occasion to look elsewhere." Comm. v. Weede, Dall. Dec., 361; Dodson v. Bunton, 81 Texas, 655; State v. Delesdenier, 7 Texas, 76; Holley v. State, 14 Texas Crim. App., 506; Murray v. State, 21 Texas Crim. App., 620; Smith v. State, 18 Texas Crim. App., 454; Engelking v. Von Wamel, 26 Texas, 469. This rule is almost uniformly adopted by the best text writers. Endlich on Interpretation of Statutes, section 4: "Where the words of a statute are plainly expressive of an intent, not rendered dubious by the context, the interpretation must conform to and carry out that intent. It matters not, in such a case, what the consequences may be. 'It has, therefore, been distinctly stated, from early times down to the present day, that judges are not to mold the language of statutes in order to meet an alleged convenience or an alleged equity; are not to be influenced by any notions of hardship; or of what in their view is right and reasonable or is prejudicial to society; are not to alter clear words, though the Legislature may not have contemplated the consequences of using them; are not to tamper with words for the purpose of giving them a construction which is 'supposed to be more consonant with justice' than their ordinary meaning. Where, by the use of clear and unequivocal language, capable of only one meaning, anything is enacted by the Legislature, it must be enforced, even though it be absurd or mischievous. If the words go beyond what was probably the intention, effect must nevertheless be given to them. They cannot be construed, contrary to their meaning, as embracing or including cases merely because no good reason appears why they should be excluded or embraced."

Now, bearing in mind that the law in question not only levies a tax but makes the failure to pay same a criminal offense subjecting the dealer to a heavy penalty, is it not clear that a person claiming the exemption could not be held as a criminal under the plain import of the language used, and if a druggist and pharmacist were arraigned and convicted under the law where, under the plain every day meaning of

the language used, he was in express terms excepted, to say to him by a
sort of judicial legislation, under the name of construction, that he
would be held criminally liable under a statute, the language of which
permits him to pursue the business in question, he could well say, as
did Macbeth of the weird sisters:

> "And be these juggling words no more believed,
> That palter to us in a double sense;
> That keep the words of promise to our ear, and break it to our hope."

2. There is perhaps another and a stronger reason why this law
must be held unconstitutional. By its plain terms it levies a tax of
$2,000 on a person selling the articles named in prohibition territory,
whereas no such tax is levied in any other territory. All persons are
at liberty in other territory to sell the named articles without tax, un-
less it be the tax on the ordinary merchants. This is not, it is con-
ceived, an equal and uniform tax throughout the limits of the State.
Under this law, a citizen living in the City of Dallas may sell Uno, Ino,
etc., to all persons that are willing to buy without let or hindrance,
whereas in the neighboring town of Lancaster he will be subject to a
tax, for State purposes, of $2,000. Under this law, in the County of
Johnson, if one desires to sell these articles, he must pay a tax of at least
$2,000 per annum, and a tax that may be $4,000 per year, whereas in
the neighboring County of Tarrant he may sell it without tax. Sup-
pose we substitute in the law for the words Ino, Uno, etc., the words
"lumber, shingles and building materials." We would then have a
tax levied in prohibition territory upon commerce on these useful
articles in Johnson County in the sum of $4,000 a year, whereas in the
adjoining county, among people wholly homogeneous, the merchants pay
practically no tax at all. It was the intention and purpose of the
founders of our government to prohibit and prevent this condition of
affairs. In all the provisions of our Constitution there is not one more
necessary or by which greater store is set than the provision that taxa-
tion should be equal and uniform among all citizens within her boun-
daries. The patriots and freemen who founded our institutions and
wrought and wove the peoples' will into our organic law understood the
importance of giving to every man a free and a fair opportunity in the
race of life. They must have understood as do we that at all times
and among all people the taxing power had been a matter of signal con-
dition. Such prostitution and discrimination of the taxing power in
respect to the ordinary articles of commerce as are here attempted in this
statute, could, if so designed, bankrupt and beggar the merchants in
half the domain of Texas, and so harass and outrage her people as
almost to create a revolution. Nor will it do to say this law should be
upheld on the pretense and pretext that it is an aid to the local option
statute. If the liquors sold are in fact intoxicating, the seller may be
convicted in the courts of the country for such sale. But as a matter
of fact, the articles proposed to be taxed and named in the act in

question are by express legislative enactments declared to be non-intoxicating. Their sale is legitimized and the authority of the government and the sanction of the State goes with the payment of the tax. Our courts have held that special provisions, methods of procedure, incidental remedies, and matters of that sort, can be enacted, having a special and peculiar relation to the enforcement of our prohibition laws. Ex parte Dupree, 101 Texas, 105 S. W. Rep., 493. But it has never been held that any Legislature can, under the guise of the enforcement of any statute, undertake to levy a tax on occupation in one section of the State and exempt by legislative authority another portion of the State from the payment of such tax on precisely the same articles. Such favoritism would be tyranny, and to prevent such discrimination was the purpose of the constitutional provision that taxation should be equal and uniform. Cummings v. Bank, 101 U. S., 153; Bank v. Hines, 30 Ohio St., 15.

In argument we were appealed to with great earnestness to uphold the law in this case with the statement that it was a serious matter to declare a law, duly passed by the Legislature, unconstitutional. We are not unmindful of the responsibility assumed by us in so declaring, but it has been held, under our system, from time immemorial, that it is not only in our province so to do, but that in a clear case we should do so. If we are at liberty to extend or construe the Constitution so as to permit something to be done which is prohibited by it, under the guise or in aid of legislation, deemed to be helpful and beneficial, the precedent is made and in other and evil times this or some other court may seek the extension of judicial authority, with our decision as a basis and a precedent in respect to some matter which may both vex and harass the citizen. The Constitution is the organic law of the land; it stands, and should stand, unless otherwise declared in the manner provided by law, unchanged and unchangeable.

> "The shouting and the tumult dies,
> The captains and the kings depart,"

but the Constitution, while it remains our Constitution, is the same yesterday, to-day and forever; it means the same thing everywhere and to all men, it is the shield of the weak, the protection of all alike; none are too poor to invoke its protection, and none too strong to escape its power. There is no place where its voice should not be heard and truly its lines should go out through all the land.

It is as important to the citizen that his rights should not be invaded in violation of the constitutional guaranties as it is that an act of the Legislature should be upheld. So that we hold that the duty to declare the law as it is, rests upon us. It is a duty that we should neither refuse nor hesitate to perform. In a clear case, a refusal to meet the issue would be criminal, an evasion worse than weakness. We believe the act to be unconstitutional in that it strikes down the guaranty of the Constitution that taxes shall be equal and uniform, and enter-

taining this view after a thorough investigation and deliberate consideration, it only remains for us with "firmness in the right, as God has given us to see the right" to declare it. *Fiat justitia ruat coelum.*

There are other grave and important questions presented by counsel for the relator about some of which we have serious doubts, but in view of our opinion on the questions above treated, we pretermit any discussion of them.

Let the relator be discharged.

*Relator discharged.*

Brooks, Judge, dissents.

[Rehearing denied March 20, 1908.—Reporter.]