### A. STROLL v. THE STATE.

No. 7769. Decided November 7, 1923.

**Junk Law—Constitutional Law—Invalid Law.**

The Act of the Thirty-Fifth Legislature, Chapter 82, Fourth Called Session, regulating the mode of purchasing junk by junk dealers and the persons engaged in that business, being made subject therein to a penalty if they bought any junk without requiring the seller to make an affidavit in writing describing the articles, etc., at the expense of the junk dealer, is unreasonable and discriminatory, and in violation of both the Constitution of the United States and this State.

Appeal from the County Court of Falls. Tried below before the Honorable Walter S. Hunnicutt.

Appeal from a conviction of violation of the junk law; penalty, a fine of $25.

The opinion states the case.

*Bartlett & Dodson,* and *Slay, Simon & Smith,* for appellant.

*Tom Garrard* and *Grover C. Morris,* Assistant Attorneys General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the County Court of Falls County of a violation of what is known as the Junk Law, and his punishment fixed at a fine of $25.

By the terms of Chapter 82, Acts Fourth Called Session of the Thirty-fifth Legislature, an attempt was made to regulate the mode of purchasing junk by junk dealers and persons engaged in that business were made subject to a penalty if they bought any junk without requiring the seller to make an affidavit in writing describing the articles and parts thereof so sold with such certainty as would identify them, stating when, where and from whom same were obtained by the seller, and the circumstances under which same came into his or her possession,—which affidavit should be at the expense of the junk dealer. In a certain section of the Act appears a definition of a junk dealer as one who deals in second-hand goods in quantities less than carload lots if such goods be other than liquids, fuel, feed, foodstuffs and furniture. Appellant's conviction was for the purchase of 250 pounds of scrap iron without having secured the affidavit required by law. Practically the only defense is an attack on the constitutionality of the law, it being asserted that the said statute is unconstitutional for that it abridges the right of the citizens in violation of the Fourteenth Amendment to the Federal Constitution; is in restraint of trade; is discriminatory; abridges the right of contract, and is unreasonable. As a basis for appellant's contentions it was shown that the 250 pounds of junk was sold for 85 cents, that two boys made the sale jointly, and that the cost of an affidavit would have been 50 cents for each affiant. The proposition thus made is that if the affidavit be a legitimate prerequisite it would have prevented the sale of this junk and would have the same effect on the sale of any other junk in small quantities by any persons who may own the same or have it for sale, if the value thereof be less than the cost of the affidavit and the law would thus operate in restraint of all sales of small quantities of junk because of the prohibitive cost of making the affidavit. There can be no doubt of the proposition that dealing in junk is a legitimate business and

that when conducted honestly it deserves the protection and encouragement of law and government;—but it is equally true that it furnishes great opportunity to dishonest persons in effectually disposing of and secreting the fruits of burglaries and thefts, and that laws aimed at the prevention of the latter should be upheld if found within the power of the law-makers to enact.

Laws forbidding the engaging in the business of junk dealers without first procuring license have been upheld. Charleston v. Goldsmith, 12 Rich. L. 470; Marmet v. State, 45 Ohio, 63, 32 N. E. 463; New Orleans v. Kaufman, 29 La. 283, 29 Am. Rep., 328; Herna v. Boldrick, 154 S. W. Rep., 369. So a statute requiring a junk dealer to keep a book in which should be made a record of the articles bought by him, Com. v. Leneord, 140 Mass. 473, 4 N. E. 96, 54 Am. Rep., 481. In People 1. Rosenthal, 197 N. Y. 394, 90 N. E. 991, 46 L. R. A. (N. S. 31), 226 U. S. 260, 33 Sup. Ct. Rep., 27, 57 L. Ed. 212, Ann. Cases 1914 B 71, a conviction of a junk dealer for receiving stolen property under a special statute making penal the act of such dealer who bought or received wire, cables, etc., without ascertainment by diligent inquiry that the person selling the same had the legal right so to do, was upheld in a judgment by the Supreme Court of the United States.

On the question that the operation of this statute is in restraint of legitimate trade and renders practically impossible the buying and selling of small quantities of junk, attention is called to the definition of a junk dealer as partially set out above. Under it a dealer in second-hand books is a junk dealer; so one who buys and sells old clothes; also one who buys and sells old shoes, guns, pistols, etc., etc. Manifestly to require the seller of every second-hand book to a dealer, to make at the expense of the purchaser an affidavit at a cost of 50 cents as a condition precedent to the sale of any second-hand book,—would practically put out of business all second-hand book dealers. So also an analysis of the purchasing of most second-hand articles would lead to a similar conclusion as to all second-hand business. Unless some one make it a business to collect junk and sell same in quantities to the stationary dealer, the latter must depend on purchases from individual junk owners. As a rule the quantities owned by individuals would be small, and the cost of making the affidavit would be a serious if not a prohibitive hindrance.

If the statute in question could be made to appear conducive in its present form to the public health or morals or safety of the community, it might be upheld as within the police power which sometimes requires that the public weal be first considered, even though at the sacrifice of conflicting private rights; but the need of such affidavit in order to make the law effective is doubted. That the cost of such affidavit could prohibit sales by citizens of property

belonging to him and the sale of which to a dealer would not seem to be injurious to either the public health, safety or morals, is plain. That the sales thus prohibited would be of single articles or those of small value, would make no difference. The law ought to be as careful of the rights of the humble beggar with one article of junk to be converted into bread as of the great corporation selling its property by trainloads.

Nor are we able to escape the conclusion that this law unjustly discriminates between those of the same class. Most dealers in second-hand furniture handle all articles of domestic furnishings, including stoves, iron beds, etc. etc. If by reason of. not being included in this law one escapes the payment of the notary fee necessary to the affidavit, when bidding against his junk dealer neighbor upon an iron bed, and he buys it because forsooth the junk man must pay the notary fee if he buys,—the latter suffers from the discrimination. Both are second-hand dealers and largely in the same kind of goods. True the junk-man originally dealt in worn out and discarded articles such as old iron, rope, rags, etc., still under the definition in this statute he is raised and his business extended until it includes all second-hand goods except furniture. We are aware that for some occult reason the statute under consideration defines junk dealers as all dealers in second-hand goods except "liquids, feed, fuel, foodstuffs and furniture," but we are at a loss to know just how liquid, feed, foodstuffs and fuel that have been used once can be used a second time and thereby be classed as second-hand.

We are confronted then with the proposition that dealers in second-hand clothing, books, shoes, guns, iron, etc., would be taxed the cost of the affidavit, while dealers in second-hand furniture would go free therefrom. There might be viewpoints and distinctions easily drawn between furniture and various other articles, but when our basis of classification is alone on the proposition that the articles are second-hand, we perceive no reason in law why an attempt to punish one and to exempt the other could be held justifiable. Ex parte Jones, 38 Texas Crim. Rep., 482, 43 S. W. Rep., 513; Rainey v. State, 41 Texas Crim. Rep., 254; 53 S. W. Rep., 82, 96 Am. State Rep. 756; Ex parte Overstreet, 39 Texas Crim. Rep., 474, 46 S. W. Rep., 825; Poteet v. State, 41 Texas Crim. Rep., 268, 53 S. W. Rep., 869; Ex parte McCarver, 39 Texas Crim. Rep., 448, 46 S. W. Rep., 936, 42 L. R. A. S. & M., 3 Am. Rep., 946; Ex parte Woods, 52 Texas Crim. Rep., 575, 581, 108 S. W. Rep., 1171, 16 L. R. A. (N. S.) 450, 124 Am. State Rep., 1107; Jackson v. State, 55 Texas Crim. Rep., 557, 117 S. W. Rep., 818.

So believing we are constrained to hold this law violative of the Constitution of this State and of the United States. The judgment will be reversed and the prosecution dismissed.

*Dismissed.*