HURT et al. v. COOPER et al.

McCRAW et al. v. S. H. KRESS & CO.
et al.
No. 12376.

Court of Civil Appeals of Texas. Dallas.
Feb. 5, 1938.

William McCraw, Atty. Gen., Scott Gaines, Earl Street and Wm. M. Brown, Assts. Atty. Gen., and Greenwood, Moody & Robertson, of Austin, for appellants.

Baker, Botts, Andrews & Wharton and Gaius G. Gannon, all of Houston, Touchstone, Wight, Gormley & Price and Burgess, Chrestman & Brundidge, all of Dallas, James W. Peavy, of Lufkin, Black & Graves, of Austin, W. H. · Dannat Pell, of New York City, and William H. Clark, Jr., of Dallas, for appellees.

LOONEY, Justice.

This is an appeal by Honorable Robert L. Hurt, District Attorney of Dallas County, Honorable William McCraw, Attorney General, and Honorable George H. Sheppard, Comptroller of the State of Texas, from a decree in. favor of appellees, perpetually enjoining appellants as public officials from enforcing an act of the Forty-Fourth Legislature adopted at its First Called Session (House Bill No. 18, c. 400, 3 Vernon's Ann.P.C. art.. 1111d) commonly known as the Chain Store Tax Law.

On original submission, having reached a tentative decision, to the effect that the judgment of the trial court was erroneous and should be reversed and judgment here rendered for appellants, dissolving the injunction issued, and a tentative opinion having been filed, the court deemed it advisable to certify to the Supreme Court for adjudication the issues of law arising in the case. The tentative opinion follows:

Appellees own and operate stores or mercantile establishments within the meaning of section 5 of the statute, Vernon's Ann.P.C. art. 1111d § 5, and are liable for the payment of the filing and license fees prescribed by the Act for the exercise of such privilege, provided the statute is a valid enactment. The statute makes it unlawful for any person, etc., to operate any store or mercantile establishment without a license issued by the Comptroller, requiring the payment of a filing fee of 50 cents for each store or mercantile establishment operated, stipulating in this connection that the expenses incurred by the Comptroller in administering the Act shall never exceed the amount of filing fees received. The provisions of the statute brought under review are these: "Section 5. Every person, agent, receiver, trustee, firm, corporation, association or copartnership opening, establishing, operating or maintaining one or more stores or mercantile establishments within this State, under the same general management, or ownership, shall pay the license fees hereinafter prescribed for the privilege of opening, establishing, operating or maintaining such stores or mercantile establishments. The license fee herein prescribed shall be paid annually and shall be in addition to the filing fee prescribed in Sections 2 and 4 of this Act. Provided that the terms, 'store, stores, mercantile establishment or mercantile establishments,' wherever used in this act shall not include: wholesale and/or retail lumber and building material businesses engaged exclusively in the sale of lumber and building material; and/or oil and gas well supplies and equipment dealers; or any place of business engaged exclusively in the storing, selling, or distributing. of petroleum products and servicing of motor vehicles; or any business now paying an occupation tax measured

by gross receipts; or any place or places of business used as bona fide wholesale or retail distributing points by manufacturing concerns for distribution of products of their own manufacture only; or any place or places of business used by bona fide processors of dairy products for the exclusive sale at retail of such products. The license fees herein prescribed shall be as follows: 1. Upon one (1) store the license fee shall be One Dollar ($1); 2. Upon each additional store in excess of one (1) but not to exceed two (2), the license fee shall be Six Dollars ($6); 3. Upon each additional store in excess of two (2) but not to exceed five (5), the license fee shall be Twenty-Five Dollars ($25); 4. Upon each additional store in excess of five (5) but not to exceed ten (10) the license fee shall be Fifty Dollars ($50); 5. Upon each additional store in excess of ten (10) but not to exceed twenty (20), the license fee shall be One Hundred Fifty Dollars ($150); 6. Upon each additional store in excess of twenty (20) but not to exceed thirty-five (35), the license fee shall be Two Hundred Fifty Dollars ($250); 7. Upon each additional store in excess of thirty-five (35) but not to exceed fifty (50), the license fee shall be Five Hundred Dollars ($500); 8. Upon each additional store in excess of fifty (50), the license fee shall be Seven Hundred Fifty Dollars ($750); such fees are for the period of twelve (12) months, and upon the issuance of any license after the first day of January of any one year, there shall be collected such fractional part of the license hereinabove fixed as the remaining months in the calendar year (including the month in which such license is issued) bears to the twelve-month period."

Appellees successfully contended below, and contend here, that the statute offends a number of constitutional provisions, state and federal; the most pertinent being provisions of our State Constitution, to wit, section 3 of article 1, guaranteeing equal rights and prohibiting special privileges, section 19 of article 1, the "due course of law" provision, section 2 of article 8, requiring occupation taxes to be equal and uniform upon the same class of subjects, and also the "due process" and "equal protection" clauses of the Fourteenth Amendment to the Federal Constitution. However, our opinion is that, unless the statute violates section 2 of article 8, the equal and uniform oc-

cupation tax provision of the State Constitution, it does not violate any other constitutional provision, state or federal; but if in conflict with said section 2 of article 8, necessarily, we think it also violates the other constitutional provisions mentioned.

The pertinent part of section 2 of article 8 of the State Constitution reads: "All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax." Under this provision, we think it obvious that the Legislature may validly subdivide or classify an occupation into different subjects, taxing each separately, provided the tax levied on each subject is equal and uniform. The occupation dealt with by the statute in question, described in general terms, is that of merchandizing, classified by the act into eight different brackets or subjects; the tax imposed on each, as is apparent from a reading of the statute, being equal and uniform.

We think the primary purpose of the act was to raise revenues, although the levy is mentioned as a "license fee." The emergency clause reciting the need of additional revenue; amounts levied being far in excess of regulatory needs, and the distribution made after collection, indicate clearly that the act was intended, primarily at least, as a revenue measure. We do not think it a matter of significance that the levy is called a "license fee," as its payment gives the right to carry on the business without the performance of any other condition. See 37 C.J. p. 169, § 6; p. 171 § 7; Hoefling v. City of San Antonio, 85 Tex. 228, 20 S.W. 85, 16 L.R.A. 608; Brown v. City of Galveston, 97 Tex. 1, 75 S.W. 488; Dayton-Goose, etc., R. Co. v. United States, D.C., 287 F. 728. Other authorities to the same effect are abundant.

Being a valid tax-gathering measure, we do not think it should be condemned because incidentally it may also serve a wholesome purpose referable to the police power, thus accomplishing dual results. In Fox Film Corporation v. Trumball, D.C., 7 F.2d 715, 720, this doctrine was approved by a Three-Judge Court; they said: "It is not a valid objection that a law enacted in the exercise of the police power imposes a tax for revenue. That it fulfills two functions—that of a police regulation and that of

raising revenue—makes it none the less legal. The business is more easily regulated where a license is imposed upon those who conduct it. Gundling v. Chicago, 177 U.S. 183, 188, 20 S.Ct. 633, 635 (44 L.Ed. 725); Bradley v. Richmond, 227 U.S. 477, 480, 481, 33 S.Ct. 318, 57 L. Ed. 603."

That the chain store method tends to create a monopoly in merchandizing, we do not think there can be a doubt. The Supreme Court of Indiana, in Midwestern, etc., Corporation v. State Board, 206 Ind. 688, 187 N.E. 882, 887, 191 N.E. 153, used language in point as follows: "The operation of a chain of stores certainly tends toward monopolizing merchandizing. It may be said that size alone tends toward monopoly, and that great stores doing a large volume of business, to some extent at least, tend to monopolize business. But these are limited to one location, and at most serve only those who can conveniently travel to that location, while the chain may reach into every community and thus has greater opportunity to reach the entire consumer field." And again: "If a neighborhood store is located in a community where the volume of business is only sufficient to sustain one store, a chain may establish a store in the community and, by dividing the business with the independent store, create a condition where both are operating at a loss. The chain store's loss may be absorbed by the other links in the chain, and when the independent merchant is forced to quit, the entire volume of business will go to the chain store and make it self-sustaining."

So, in view of section 26 of the Bill of Rights, providing that "Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed," we do not think it can reasonably be insisted that the statute, as a revenue measure, is any less valid, because it lends itself to a policy of discouraging monopolistic tendencies of chain store merchandizing by differential taxation on the various units, thereby furthering the stability and encouraging the maintenance of small independent mercantile establishments.

In our consideration of the questions presented, we will not be concerned either with the wisdom, propriety, or justice of the measure under review, or with the motive or public policy that actuated the Legislature in enacting the statute; our sole purpose and duty being to sustain or condemn dependent upon the existence or nonexistence of a substantial difference between the subjects taxed and those exempted, and as repeatedly held, the difference (if it exists at all) need not be great.

Arguing their contention that the classifications are whimsical, arbitrary, and discriminatory, appellees compare large department stores operating under one roof, carrying many lines of merchandise and paying a nominal tax, with a chain of many stores under one management, enjoying less annual sales and paying a much larger tax. The illustration, necessarily, is based upon the assumption that the one-roof merchant carries a larger volume of merchandise than the chain of many units; but the statute imposes no such condition. Each store in a chain may carry as large a volume and as many different lines of merchandise (excluding those exempted) as the merchant may choose without increasing the tax burden; in fact, each unit of a chain may become a department store, rivaling or even overwhelming in size its largest independent competitor.

Appellees make the further contention that the voluntary chain (composed of independent merchants) enjoys every advantage enjoyed by a singly owned chain. It is no doubt true that, by co-operation, voluntary chain merchants may enjoy many of the advantages enjoyed by the singly owned chains, yet there inheres in the different methods of merchandizing material differences; advantages in favor of the chain store merchant that are interrelated and interdependent; besides, the voluntary chain cannot jointly advertise as effectually as the chain is permitted to do, without price-fixing in violation of our Anti-Trust Law, article 7426, subd. 2, R.C.S.

It is held generally that the method of chain store merchandizing is quite different from that adapted to the ordinary singly owned and operated independent store, and that this difference is regarded so fundamental as to justify the Legislature in classifying and taxing them differently. In the case of Penny Stores v. Mitchell, D.C., 59 F.2d 789, 791, a Three-Judge Court held the chain store tax statute of the state of Mississippi constitutional, saying: "The matter of classification is not for expert witnesses, but for the Legislature, primarily and con-

clusively, unless a state of facts reasonably cannot be conceived to sustain it." The court then held that there was no essential difference in this case and the Jackson Case, State Board of Tax Com'rs v. Jackson, 283 U.S. 527, 51 S.Ct. 540, 75 L.Ed. 1248, 73 A.L.R. 1464, 75 A.L.R. 1536, saying: "The essential facts of single ownership of multiple stores are the same on this record as in the Indiana and North Carolina cases. First and foremost, there is the physical difference of operating many stores under one management in more or less widely separated localities. This distinction cannot be effaced by expert testimony. McCarty, a witness for the plaintiff, and a chain store operator, was asked why he did business at more than one store if he would get the same advantages from one store that he got from a number of them. His answer was: 'We can serve certain patrons with greater convenience.' This brings the case squarely within the rule announced in Singer Sewing Machine Co. v. Brickell, 233 U.S. 304, 34 S.Ct. 493, 58 L.Ed. 974, where the only difference in the two persons selling sewing machines was that one could serve its customers with greater convenience than the other. Other differences were pointed out by the court in the Jackson Case, 283 U.S. 527, 51 S.Ct. 540, 542, 75 L.Ed. 1248, 73 A.L.R. 1464, [75 A.L.R. 1536]. In that case, as in the case at bar, the evidence indicated that all of the advantages were 'interrelated and interdependent in the chain store business. The witnesses conceded that some of them may be found in large independent grocery or drug stores or the like, but they did not, as appellee claims, state that all of them combined, exists therein, as in chain stores.'"

We do not deem it necessary to follow the detailed attack made by appellees on the statute in question, because we think every objection urged and every criticism made has heretofore been denied by courts—state and federal—in cases arising under similar chain store tax statutes construed with reference to the Fourteenth Amendment to the Federal Constitution, and provisions of State Constitutions, substantially the same as our own. See State Board of Tax Com'rs v. Jackson, 283 U.S. 527, 551, 51 S.Ct. 540, 543, 75 L.Ed. 1248, 73 A.L.R. 1464, 75 A.L.R. 1536; Liggett Co. v. Lee, 288 U.S. 517, 538, 53 S.Ct. 481, 486, 77 L.Ed. 929, 85 A.L.R. 699, reversing the Supreme Court of Florida,

Liggett Co. v. Amos, 104 Fla. 609, 141 So. 153, on a phase of the case, but strongly reaffirming the doctrine announced in State Board v. Jackson, supra; also, Fox v. Standard Oil Co., 294 U.S. 87, 91, 55 S.Ct. 333, 335, 79 L.Ed. 781; Southern Grocery Stores v. South Carolina Tax. Comm., D. C., 55 F.2d 931; Penny Stores v. Mitchell, D.C., 59 F.2d 789; Great A. & P. Tea Co. v. Maxwell, 199 N.C. 433, 154 S.E. 838; Penney Co. v. Diefendorf, 54 Idaho, 374, 32 P.2d 784; Safeway Stores v. City of Portland, 149 Or. 581, 42 P.2d 162; Great A. & P. Tea Co. v. Spartanburg, 70 S.C. 262, 170 S.E. 273; Smith Co. v. Fitzgerald, 270 Mich. 659, 259 N.W. 352 (very much in point).

Mr. Justice Roberts, in State Board of Tax Com'rs of Ind. v. Jackson, supra, used the following language in point: "The principles which govern the decision of this cause are well settled. The power of taxation is fundamental to the very existence of the government of the states. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. Bell's Gap R. Co. v. Pennsylvania, 134 U.S. 232, 10 S.Ct. 533, 33 L.Ed. 892; Southwestern Oil Co. v. Texas, 217 U.S. 114, 30 S.Ct. 496, 54 L.Ed. 688; Brown-Forman Co. v. Kentucky, 217 U.S. 563, 30 S.Ct. 578, 54 L.Ed. 883. The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, American Sugar Ref. Co. v. Louisiana, 179 U.S. 89, 21 S.Ct. 43, 45 L.Ed. 102, or if any state of facts reasonably can be conceived to sustain it. Rast v. Van Deman & L. Co., 240 U.S. 342, 36 S.Ct. 370, 60 L.Ed. 679, L.R.A.1917A, 421, Ann.Cas.1917B, 455; Quong Wing v. Kirkendall, 223 U.S. 59, 32 S.Ct. 192, 56 L.Ed. 350. As was said in Brown-Forman Co. v. Kentucky, supra (217 U.S. 563, 573, 30 S.Ct. 578, 54 L.Ed. 887): 'A very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings, businesses, or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests

upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.' It is not the function of this court in cases like the present to consider the propriety or justness of the tax, to seek for the motives, or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the Legislature if there are substantial differences between the occupations separately classified. Such differences need not be great. The past decisions of the Court make this abundantly clear."

■ So, we conclude that the validity of the act in its affirmative operation—that is, in the classification of the subjects taxed—is no longer an open question, but has been definitely settled against the contention of appellees.

■ Appellees also challenged the validity of the act, because of the exemptions, contending that they are unsupported by any factual difference between the taxed and untaxed subjects; that they are unreasonable, whimsical, arbitrary, violative alike of the equality and uniformity clauses of the State Constitution and of the equal protection clause of the Fourteenth Amendment to the Federal Constitution, rendering the act unconstitutional and void. In a taxing or regulatory statute, an exemption is but a phase of the general subject of classification, for necessarily the selection of subjects for taxation or regulation is of itself an exemption of those not taxed or regulated. Cooley on Taxation, 2d Ed., p. 200, announced the doctrine, as follows: "The right to make exemptions is involved in the right to select subjects of taxation and apportion the public burdens among them, and must consequently be understood to exist in the law-making power wherever it has not in terms been taken away. To some extent it must exist always, for the selection of subjects of taxation is of itself an exemption of what is not selected."

Appellees argue that the classification and levies are based solely upon the basis of the number of stores owned and operated under one management, in which goods, wares, or merchandise of any kind are sold at retail or wholesale, and that as the businesses exempted also sell merchandise of designated kinds, it follows that the subjects taxed and those exempted are identical, hence the exemptions are discriminatory and personal in nature, rendering the statute void.

■ We think appellees have an erroneous concept of the subjects taxed. The definition of the "store and mercantile establishments" taxed is found in section 7 of the act, Vernon's Ann.P.C. art. 1111d, § 7 (which must be construed in connection with section 5) reading: "The term 'store' as used in this Act shall be construed to mean and include any store or stores or any mercantile establishment or establishments not specifically exempted within this Act which are owned, operated, maintained, or controlled by the same person, agent, receiver, trustee, firm, corporation, copartnership or association, either domestic or foreign, in which goods, wares or merchandise of any kind are sold, at retail or wholesale." The following clause section 7 "in which goods, wares or merchandise of any kind are sold," necessarily, is limited by and must be construed in connection with the exemptions mentioned in section 5, and as thus limited the clause, describing the stores and mercantile establishments taxed, means those "in which goods, wares or merchandise of any kind are sold, at retail or wholesale," except lumber and building material; oil and gas supplies and equipment; petroleum products; publishing and selling textbooks (the only business within the meaning of the exemption in favor of businesses paying an occupation tax measured by gross receipts); manufactured products in the hands of the manufacturer, and dairy products in the hands of the processor. As thus construed, we think it apparent that the basis of classification adopted includes not only the method of merchandizing, but the nature and kind of merchandise sold as well.

Statutes containing exemptions based upon similar differences have repeatedly been held valid by both state and federal courts, as against the objection that they violated State and Federal Constitutions in the respects as contended here. A few representative cases from our own courts will be noticed at this point. In Texas Co. v. Stephens, 100 Tex. 628, 103 S.W. 481, 485, our Supreme Court affirmed the validity of a statute levying a gross receipt tax on wholesale dealers in petroleum products, denying the contention that the act was discriminatory because no tax was levied on wholesale dealers in other commodities. The statute taxed wholesale dealers in petroleum products and, by necessary implication, exempted wholesale dealers in all other lines of merchandise.

The reverse method was pursued in the present statute—that is, it exempts merchants selling specified lines, taxing dealers in all other lines—but the factual basis of classification is identical. Speaking for the court, Associate Justice Williams said: "The very language of the Constitution of the state implies power in the Legislature to classify the subjects of occupation taxes and only requires that the tax shall be equal and uniform upon the same class. Persons who, in the most general sense, may be regarded as pursuing the same occupation, as, for instance, merchants, may thus be divided into classes, and the classes may be taxed in different amounts and according to different standards. Merchants may be divided into wholesalers and retailers, and, if there be reasonable grounds, these may be further divided according to the particular classes of business in which they may engage. The considerations upon which such classifications shall be based are primarily within the discretion of the Legislature. The courts, under the provisions relied on, can only interfere when it is made clearly to appear that an attempted classification has no reasonable basis in the nature of the businesses classified, and that the law operates unequally upon subjects between which there is no real difference to justify the separate treatment of them undertaken by the Legislature. This is the rule in applying both the state and federal Constitutions, and it has been so often stated as to render unnecessary further discussion of it." The statute involved in Texas Co. v. Stephens, supra, was upheld by the United States Supreme Court, in Southwestern Oil Co. v. Texas, 217 U.S. 114, 30 S.Ct. 496, 498, 54 L.Ed. 689, denying the contention that it violated the Fourteenth Amendment to the Federal Constitution; the court saying that: "It is not questioned that the state may classify occupations for purposes of taxation. In its discretion it may tax all, or it may tax one or some, taking care to accord to all in the same class equality of rights. The statute, in respect of the particular class of wholesale dealers mentioned in it, is to be referred to the governmental power of the state, in its discretion, to classify occupations for purposes of taxation. The state, keeping within the limits of its own fundamental law, can adopt any system of taxation or any classification that it deems best for the common good and the maintenance of its government, provided such classification be not in violation of the 14th Amendment." In the course of the opinion, the court quoted with approval from Connolly v. Union, etc., Co., 184 U.S. 540, 562, 22 S.Ct. 431, 46 L.Ed. 679, as follows: "A tax may be imposed only upon certain callings and trades, for when the state exerts its power to tax, it is not bound to tax all pursuits or all property that may be legitimately taxed for governmental purposes. It would be an intolerable burden if a state could not tax any property or calling unless, at the same time, it taxed all property or all callings. Its discretion in such matters is very great, and should be exercised solely with reference to the general welfare, as involved in the necessity of taxation for the support of the state. A state may, in its wisdom, classify property for purposes of taxation, and the exercise of its discretion is not to be questioned in a court in the United States, so long as the classification does not invade rights secured by the Constitution of the United States." In State v. Galveston, etc., Co., 100 Tex. 153, 97 S.W. 71, 77, a statute levying an occupation tax on railroads, based upon gross receipts from business done in the state, was alleged to be discriminatory and violative of both State and Federal Constitutions, because it was not made applicable to persons and corporations engaged in the business of common carriers other than railroads. Our Supreme Court held the classification reasonable and the statute constitutional, saying: "It will be observed that the provision of the Constitution applies 'to the same class of subjects,' and not to the persons who may pursue the same character of business. The same rule of construction applies to the Constitution of the state as is applied by the courts to the provision of the Constitution of the United States, providing that no state shall deny to any citizen of the United States equal protection of the law, as it affects the power to levy taxes; and, so tested, the Legislature had the power to constitute railroads, engaged in the carrying business, a class upon which to assess occupation taxes." This case was reversed by the Supreme Court of the United States (210 U.S. 217, 28 S.Ct. 638, 52 L.Ed. 1031) but for a reason other than that the statute was unconstitutional. The statute was again before our Supreme Court, in State v. Missouri, K. & T. R. Co., 100 S.W. 146. The exemption in favor of the Texas & Pacific Railway Company, on account of its being a creature of the federal govern-

ment and not subject to the gross receipt tax, was under consideration, it being contended that the statute was unconstitutional because of the discrimination. This contention was overruled and the statute again upheld. In Ex parte Bradshaw, 70 Tex.Cr.R. '166, 159 S.W. 259, 261, our Court of Criminal Appeals upheld an ordinance of the City of Hillsboro, prohibiting peddlers from pursuing their business on certain streets in the city, exempting persons selling products grown by them or under their control. The ordinance was attacked because violative of section 3 of article 1 of the Constitution, the "equal rights" clause of our Bill of Rights. Disposing of this contention, the court said: "The discrimination in favor of mechanics and farmers in the sale of their products is within the power conferred by the charter upon the common council. These immunities have been recognized for many years. By the statute of 50 Geo. III. c. 41, § 23, real workers and makers of goods within Great Britain were exempt from the payment of the license which was imposed upon hawkers and peddlers. 1 Barn. & Adol. 279; 10 Barn. & C. 66. In many, if not in most, of the American States, these immunities are granted to mechanics and farmers selling their own products, and the power is not questioned." It will be observed that the exemption sustained in this case, in effect, is of the same character as the exemptions extended by the act under consideration to merchants selling their own products.

The Court of Civil Appeals at Austin applied the same doctrine in Dallas Gas Co. v. State, 261 S.W. 1063, 1066. The Legislature levied an occupation tax on gas, electric light, power and waterworks companies, and water and light plants, based on the gross receipts of such companies. The tax on companies operating in cities of 10,000 and less than 25,000 inhabitants was one-fourth of one per cent.; on those operating in cities of more than 25,000 inhabitants the tax was one-half of one per cent.; and no tax was levied upon companies operating in cities of less than 10,000. Here the identical business was classified, not upon any factual difference in the nature of the business, but upon factual differences in the conditions and circumstances under which the businesses were operated. The contention was made that the statute violated the Fourteenth Amendment to the Federal Constitution, the Bill of Rights of this state, and sections 1 and 2

of article 8 of the State Constitution, the "equality and uniformity" provisions with reference to the levying of occupation taxes, in that the classification was an unjust and unauthorized discrimination. The court denied these contentions, saying, among other things, that: "A just and reasonable discrimination in the levy would seem to approach nearer a uniform and equal apportionment of the burthen of the tax among those upon whom it is levied than any other. As the Constitution has laid down no rule by which the uniformity and equality it requires is to be secured, it is the duty of the Legislature to ascertain and determine how it may best be accomplished." The court then quoted from Blessing v. City of Galveston, 42 Tex. 641, 660, saying: "But discrimination in occupations and classifications of them, so far as it has been made to appear to us, seems to be a reasonable and proper rule applied by the Legislature for the purpose of apportioning such taxes with equality and uniformity. Until it is shown that the Legislature has clearly exceeded the limit of their authority and disregarded the restrictions by which it should be controlled, evidently the court cannot interfere." After citing a number of cases upon the question, the court continued: "It is clear from these decisions that in passing upon the constitutionality of such a statute, measured either by the state or United States Constitutions, the same test is applied; that is, whether the classification made is essentially arbitrary, unreasonable, and unreal." As will be observed, after selecting a general classification—power and water companies—the statute divided the general class into smaller classes, varying the tax levied, also making an exemption.

Although many other Texas cases to the same effect could be cited, we do not deem it necessary to lengthen the opinion by doing so, as those referred to reveal the status of the case law in this state on the phase of the subject under consideration. These decisions show that, whether the validity of an occupation tax is tested by applicable provisions of the State Constitution, requiring equality and uniformity in levying the tax, or is tested by the equal protection clause of the Fourteenth Amendment, to the Federal Constitution, the question is substantially the same.

A few pertinent federal cases on the same phase of the subject will now be mentioned. In American Sugar Ref. Co.

*v.* Louisiana, 179 U.S. 89, 21 S.Ct. 43, 44, 45 L.Ed. 102, the court upheld a statute of the state of Louisiana levying a gross-receipt tax upon the business of refining sugar and molasses, exempting planters and farmers who refine their own sugar and molasses, also planters who granulated sugar for other planters. It will be observed that the exemption in favor of those refining their own sugar and molasses (a species of manufacturing) is of the same nature as the exemption in the statute under consideration in favor of manufacturers and processors of dairy products selling products of their own manufacture. The Supreme Court sustained the law against the contention that it denied equal protection because of the exemptions, saying: "The act in question does undoubtedly discriminate in favor of a certain class of refiners, but this discrimination, if founded upon a reasonable distinction in principle, is valid." To the same effect see: Brown-Forman Co. v. Kentucky, 217 U.S. 563, 30 S.Ct. 578, 54 L.Ed. 883; Quong Wing v. Kirkendall, 223 U.S. 59, 32 S.Ct. 192, 56 L.Ed. 350; W. W. Cargill Co. v. Minnesota, 180 U.S. 452, 21 S.Ct. 423, 45 L.Ed. 619; Magnano Co. v. Hamilton, 292 U.S. 40, 54 S.Ct. 599, 602, 78 L.Ed. 1109. In the case last cited, the contention was made that the imposition and collection of the tax would result in depriving the companies involved of the right to do business, in regard to which the court said: " 'The power to tax may be exercised oppressively upon persons, but the responsibility of the legislature is not to the courts, but to the people by whom its members are elected.' Again, in the McCray Case, supra, answering a like contention, this court said (page 59 of 195 U.S., 24 S.Ct. 769, 778 [49 L.Ed. 78, 1 Ann.Cas. 561]) that the argument rested upon the proposition 'that, although the tax be within the power, as enforcing it will destroy or restrict the manufacture of artificially colored oleomargarine, therefore the power to levy the tax did not obtain. This, however, is but to say that the question of power depends, not upon the authority conferred by the Constitution, but upon what may be the consequence arising from the exercise of the lawful authority.' And it was held that if a tax be within the lawful power of the Legislature, the exertion of the power may not be restrained because of the results to arise from its exercise." The doctrine announced in the above case answers the contention of appellees that the purpose of the statute in question was to compel reduction or abandonment by merchants of the operation of multiple stores. The case of Rast v. Van Deman Co., 240 U.S. 342, 36 S.Ct. 370, 378, 60 L.Ed. 679, L.R.A.1917A, 421, Ann.Cas.1917B, 455, involved the validity of a statute of the state of Florida, drawn after the pattern of the chain store tax involved in the instant case. The contention being that the statute was unreasonable, arbitrary, and prohibitory. The court upheld the statute, saying in part: "Complainants allege that the license tax which the statute imposes is of prohibitory character, and assert that they are exercising inviolable rights and privileges which the excess of the tax prevents in violation of the 14th Amendment; they contend that hence the statute is invalid. It is not certain from the allegations of the bill that the tax is of the asserted character, but granting it to be so, we have shown that the business schemes described in the bill are not protected from regulation or prohibition by the Constitution of the United States" (citing many authorities). For other pertinent federal decisions illustrative of the authority of the states to legislate in regard to their police and fiscal matters, see Citizens' etc., Co. v. Fuller, 229 U.S. 322, 33 S.Ct. 833, 57 L.Ed. 1207; Pacific Express Co. v. Seibert, 142 U.S. 339, 12 S.Ct. 250, 35 L.Ed. 1035; King v. Mullins, 171 U.S. 404, 18 S.Ct. 925, 43 L.Ed. 214; Consolidated Coal Co. v. Illinois, 185 U.S. 203, 22 S.Ct. 616, 46 L.Ed. 873; Williams v. Fears, 179 U.S. 270, 21 S.Ct. 128, 45 L.Ed. 186. The case of Ohio Oil Co. v. Conway, 281 U.S. 146, 50 S.Ct. 310, 74 L.Ed. 775, involved a statute of Louisiana, levying a tax upon various natural resources on the basis of the quantity served. It was contended that the tax was discriminatory as between classes of oils and oil fields. The statute was upheld, the court saying that the state was not required to tax according to value, but could classify according to the gravity of the oil. This doctrine answers the contention of appellees, to the effect that the graduated tax levied on stores, the amount depending upon the number operated, was not proper, contending that the classification should have been based upon the value of the privilege licensed. Ohio Tax Cases, 232 U.S. 576, 34 S.Ct. 372, 375, 58 L.Ed. 737, involved the validity of a statute levying an occupation tax upon various public utility companies based upon their gross

receipts. This phase of the statute was attacked by railroad companies, on the ground of discrimination, in that, other utility companies were not included and that certain other utility companies were taxed small percentages. These contentions were overruled, the court saying: "We agree with the court below that whether the question be considered in view of the uniformity and equality provisions of the Ohio Constitution, or of the 'equal protection' clause of the 14th Amendment, the result is the same; it cannot be said that the classification rests upon no reasonable and sufficient basis of distinction." Many other cases, federal and state, illustrative of the power of State Legislatures to classify, for purposes of taxation or regulation, could be cited, but we think the above indicate with reasonable certainty the status of the law on the subject throughout the country.

We will now turn from the subject in its general aspect to a consideration of the status of the law with respect to the power of the Legislature to make exemptions in taxing the occupation of merchandizing by the chain store method. The first chain store tax case in which the court dealt specifically with the subject of exemptions was Liggett Co. v. Lee, 288 U.S. 517, 53 S.Ct. 481, 486, 77 L.Ed. 929, 85 A.L.R. 699, involving the Florida chain store tax statute, which exempted filling stations engaged exclusively in the sale of gasoline and other petroleum products. The statute was attacked as being discriminatory and in violation of the Fourteenth Amendment to the Federal Constitution. The court held that the exemption did not vitiate the statute, saying: "It has long been settled that the Fourteenth Amendment does not prevent a state from imposing different taxes upon different trades and professions or varying the rates of excise upon various products." Citing Bell's Gap R. Co. v. Pennsylvania, supra; Southwestern Oil Co. v. Texas, supra. A similar holding was had in Southern Grocery Stores v. South Carolina Tax Comm., D. C., 55 F.2d 931, 933, involving the validity of the South Carolina chain store statute, which exempted filling stations. Answering the contention that the exemption rendered the Act unconstitutional, the court said: "There can be no question, we, think, but that the exemption of gasoline filling stations from the tax rests upon a reasonable classification. Such stations as a general rule sell only gasoline and other

articles of merchandise upon which the state collects a heavy excise tax, and it was doubtless for this reason that they were exempted from the tax in question. Furthermore, such filling stations are quite distinct from ordinary stores or mercantile establishments." The Idaho chain store statute also exempted filling stations, and its validity was attacked for that reason, in the case of Penney Co. v. Diefendorf, 54 Idaho 374, 32 P.2d 784, 788. The Supreme Court of that state sustained the statute, saying: "But considering the provision excluding gasoline filling stations, as creating a classification thereby granting an exemption, we believe such classification is absolutely justified and valid under the authorities." The chain store statute of Michigan also exempted filling stations from its operation, and, as against a similar attack, was upheld by the Supreme Court of that state in Smith Co. v. Fitzgerald, 270 Mich. 659, 259 N.W. 352, 360. After citing Liggett Co. v. Lee, supra, the court said: "We find nothing in the exemption in question which violates either the Constitution of this state or the Constitution of the United States."

It will be observed that the statute involved in each of the cases just mentioned contained only one exemption, that is, filling stations engaged exclusively in the sale of gasoline and other petroleum products, while the statute under review in the instant case contains a number of exemptions. However, the number involved is immaterial, the test being whether the exempted subject is substantially different from the taxed subject; if the difference exists, the Legislature, in the exercise of its discretion, may exempt as many lines as it chooses. The Ohio chain store tax statute, being reviewed in the case of Great A. & P. Tea Co. v. Valentine, D. C., 12 F.Supp. 760, 767, was held constitutional insofar as it levied a tax graduated according to the number of stores operated under the same ownership or control. The act contained a number of exemptions, including co-operative associations not organized for profit, persons selling coal, ice, lumber, grain, feed, building materials; hotels and rooming houses including dining rooms and cafes operated in connection therewith; also, stores situated in unincorporated villages, and persons engaged in farming and gardening, selling their own products. Notwithstanding these exemptions the statute was held constitutional on the ground that

the classifications were reasonable; the court saying: "We are content with a finding that the chain stores exempted sell in general a different line of merchandise or service than do the complainants or inter-veners, and that the amount of any goods sold by the latter in competition are negligible in size or amount." The language, in our opinion, is equally applicable to the different lines of merchandizing exempted from the operation of the statute under consideration.

In support of their contention that the statute violates the Constitutions, appellees cite and rely upon a number of cases from our Supreme Court and other appellate courts of the state. One of the leading cases is that of Pullman Palace-Car Co. v. State, 64 Tex. 274, 53 Am.Rep. 758. In that case, the Supreme Court had under consideration a statute levying a tax upon every person, firm, or association of persons, owning or running any palace, sleeping or dining car, not owned by the railway company; railways operating their own palace sleeping and dining cars being exempted. The court held the statute unconstitutional and void, the basis of the decision being that the classification was unreasonable, that the thing taxed was the operation of palace sleeping or dining cars; the only difference between the railroads exempted, and pullman car companies taxed, was merely one of ownership, holding that it was improper to tax one for doing precisely the same thing exempted to the other. We do not think that case is in point, for the reason that the businesses exempted in the statute under consideration are not precisely the same as those taxed, there being factual differences both in the method of merchandizing and in the kinds of merchandise sold. The subject taxed in the Pullman Case, supra, and the subject exempted, were precisely the same; the difference being, not in the nature of the subject, but in the person or agency by whom exercised, which was not at all an element of the subject taxed. Appellees also rely on the cases of Hoefling v. City of San Antonio, 85 Tex. 228, 20 S.W. 85, 16 L.R.A. 608; Ex parte Jones, 38 Tex.Cr.R. 482, 43 S.W. 513; Ex parte Overstreet, 39 Tex.Cr.R. 474, 46 S.W. 825; Jackson v. State, 55 Tex.Cr.R. 557, 117 S.W. 818; Owens v. State, 53 Tex.Cr.R. 105, 112 S.W. 1075, 126 Am.St.Rep. 772; Ex parte Woods, 52 Tex.Cr.R. 575, 108 S.W. 1171, 16 L.R.A.,N.S., 450, 124 Am.St.Rep. 1107; Ex parte Bockhorn, 62 Tex.Cr.R. 651, 138 S.W. 706; Stroll v. State, 95 Tex.Cr.R. 611, 255 S.W. 620, 30 A.L.R. 1424; Ex parte Baker, 127 Tex.Cr.R. 589, 78 S.W. 2d 610; Davis v. White, Tex.Civ.App., 260 S.W. 138; and Ex parte Blair, 97 Tex.Cr.R. 103, 260 S.W. 1044. We fail to find that the doctrine announced in either of these cases support the contention of appellees, in that, in each the statute involved, burdened and exempted substantially the same thing, there being no difference justifying the discrimination.

■ We conclude that the chain store tax statute under consideration is constitutional and valid, and that, in enacting same the Legislature acted well within its constitutional powers.

■ We will briefly notice other assignments and propositions urged by appellants, although the questions raised pass out under our holding, to the effect that the provisions of the act in the respect brought under review, are valid. Appellants invoke the doctrine announced by our Supreme Court, in Texas & P. R. Co. v. Mahaffey, 98 Tex. 392, 84 S.W. 646, 648, reading: "It is settled law, and now a familiar rule, that where a statute contains an unconstitutional provision, and another which, if standing by itself, would be valid, the latter will be given effect, provided they are so clearly independent of each other that the court can say that the Legislature would have passed it if the former had been omitted. On the other hand, if they be so connected one with the other, or so dependent one upon the other, that it is apparent that the Legislature would not have passed the act, except as a whole, then the entire statute must fall." Contending that, even if section 5 of the act (applicable to the merchandizing pursued by appellees) is held invalid and is eliminated, yet there would remain a perfectly valid provision applicable to the kind of merchandizing enumerated in section 5a of the act, Vernon's Ann.P.C. art. 1111d, § 5a, and that as to such, the statute is valid and enforcible. Appellees are not conducting any business described in section 5a of the act, and if amenable at all, their amenability is under the provisions of section 5; hence, no question having arisen under section 5a, we are not called upon to make any decision as to

its continuing validity in the event section 5 is held unconstitutional.

Appellants also contend that, if the court should hold the exemptions contained in section 5 of the act arbitrary, that the same may be stricken out, and still there will remain a complete and perfectly workable act. That appellants' position at this point may be understood, we quote from their brief; they say: "* * * This proviso might be entirely eliminated from the Act and we would still have a perfectly workable and complete Act. And the legislature has expressly said that, if any part of the Act is held unconstitutional, it shall not affect the remainder. We see no reason why this expressed intention should not apply to this proviso as well as to any other section of the Act which the court might determine to be unconstitutional. The legislature has, in effect, said: It is our intention to leave out of the provisions of the Act the exempted businesses, but if we cannot do so because of some constitutional provision, then it is our intention that all businesses falling within the main definition of stores or mercantile establishments should be included therein, including those mentioned in the proviso." As authority for this contention, appellants cite Henderson v. McMaster, 104 S.C. 268, 88 S.E. 645, and Gulfport, etc., Ass'n v. City of Gulfport, 155 Miss. 498, 124 So. 658. The excerpts quoted by appellants from the opinions in these cases, seemingly, sustain their contention, but we think a close reading of the opinions show that the language quoted was not necessary to the decisions; besides, no authority was cited for the doctrine announced, and, in our opinion, it is not in accord with the soundest reasoning on the subject. The act, section 5, covers a field for the operation of the statute limited by the exemptions—that is, levies were made upon certain subjects and certain subjects were exempted from the operation of law—that is, left untaxed. As the Legislature failed to tax the exempted subjects, even alternatively, we are without authority to do what it failed to do. This precise question was decided by our Supreme Court, in Pullman, etc., Co. v. State, 64 Tex. 274, 279, 53 Am.Rep. 758, in the following language: "The legislature alone can impose taxes, and determine what occupations shall be taxed; and when it imposes an occupation tax and expressly declares that given persons or corporations shall not be subjected to it, the courts have no power to declare that they shall; but they have the power to declare that the act by which such a discrimination is made is inoperative upon those upon whom the burden is attempted to be imposed, because violative of the rule requiring equality and uniformity." In Hill v. Wallace, 259 U.S. 44, 70, 71, 42 S.Ct. 453, 458, 459, 66 L.Ed. 822, the act involved contained a saving clause, in effect, the same as section 11 of the act under consideration, Vernon's Ann.P.C. art. 1111d, § 11. The court held the entire act void, applying the rule announced in United States v. Reese, 92 U.S. 214, 23 L.Ed. 563; Trade-Mark Cases, 100 U.S. 82, 99, 25 L.Ed. 550; and Butts v. Merchants', etc., Co., 230 U.S. 126, 33 S.Ct. 964, 57 L.Ed. 1422. In the opinion, Chief Justice Taft, replying to the contention that the statutes under consideration in the cases just mentioned contained no saving clause, said "To be sure in the cases cited there was no saving provision like section 11, and undoubtedly such a provision furnishes assurance to courts that they may properly sustain separate sections or provisions of a partly invalid act without hesitation or doubt as to whether they would have been adopted, even if the Legislature had been advised of the invalidity of part. But it does not give the court power to amend the act." 259 U.S. 44, 71, 42 S.Ct. 453, 459, 66 L.Ed. 822. The doctrine applicable to the situation was aptly stated by the Supreme Court of Florida in State v. Watkins, 88 Fla. 392, 102 So. 347, 356; the court said: "The effect of such provisions in a statute is merely to affirm the rule which has ever been applied by this court independently of such provisions. The rule is that part of a statute may be unconstitutional and void without affecting the validity of other parts, if they are not dependent upon each other; that is to say, if the valid portions are capable of being executed without the invalid part, in accordance with the purpose of the Legislature. * * * But, if an invalid section or part of a statute is of such import that the other sections or parts without it would cause results not contemplated or desired by the Legislature, then the entire statute must be held inoperative. * * * To hold that [such section] extends the rule, as announced above, is to affirm that the Legislature

may delegate to the courts the power to declare which of two propositions, inter-dependent, yet inconsistent, embraced in one rule, shall be the law. Such power is legislative." To the same effect see Connolly v. Union, etc., Co., 184 U.S. 540, 22 S.Ct. 431, 46 L.Ed. 679. We therefore overrule this contention of appellants.

In propositions Nos. 11, 12, 13, and 14 and assignments to which the propositions are germane, appellants complain of the action of the trial court in excluding certain evidence. Necessarily, this contention is based upon the idea that the constitutionality of the act is to be tried out as a question of fact—in other words, as a jury question, rather than as a judicial question to be decided by the court. This position is rather unique, no authority in point has been cited, and, in our opinion, none can be found. It is only where a statute is ambiguous or uncertain in meaning that resort may be had to extrinsic evidence to show its meaning. 59 C.J. 1037, § 615. Cases may be found where evidence was heard, as in the instant case, and we know of no objection to such procedure, as extrinsic facts may bring immediately to the attention of court the conditions confronting the Legislature when the statute was enacted; but as courts are authorized to take judicial cognizance of such conditions, we do not think error can be predicated upon the refusal of the trial court to admit evidence, where, in the exercise of its discretion, such evidence is deemed unnecessary: "Whether a seeming Act of a legislature is or is not a law is a judicial question to be determined by the court and not a question of fact to be tried by a jury, even though a determination of the question may involve a finding of fact." 59 C.J. 621, § 181. "The right and duty of the judiciary to take jurisdiction and decide cases when constitutional questions are presented, are both imperative and inescapable * * *." 12 C.J. 699 § 40. Also see Blessing v. Galveston, 42 Tex. 641, 660; Walnut v. Wade, 103 U.S. 683, 26 L.Ed. 526; South Ottawa v. Perkins, 94 U.S. 260, 24 L.Ed. 154.

We therefore overrule appellants' propositions and assignments complaining of the action of the trial court in refusing to permit the introduction of the evidence offered.

In harmony with the views heretofore expressed, we hold that the act in question, as to appellees, is valid and constitutional; that the court below erred in holding to the contrary and in perpetually enjoining appellants (public officials of the State charged with the duty of enforcing the statute) from enforcing the same; therefore, are of opinion that the judgment below should be reversed and judgment here rendered for appellants, dissolving the injunction.

The exhaustive briefs and able written and oral arguments by counsel for both sides have been of great assistance to members of this court, for which they express appreciation.

[Signed] LOONEY, Associate Justice.

While we agree to the conclusion as to the constitutionality of the "chain store" law, announced by Associate Justice LOONEY in the tentative opinion, such agreement is not without grave doubt as to the validity of this law, when construed in the light of the provisions of section 2 of article 8 of the State Constitution, and in view of the exemptions of certain named businesses from the operation of the law. However, as under the settled rule of law obtaining in this state, when passing upon the validity of a statutory enactment, requiring all doubt as to its constitutionality to be resolved in favor of the validity of the law, we yield our doubt to such rule of law, and agree to the conclusion reached in the tentative opinion.

[Signed] B. L. JONES, Chief Justice.

[Signed] JOEL R. BOND, Associate Justice.

The questions of law certified to the Supreme Court are these:

"(1) Was the act in question enacted by the Legislature primarily for the purpose of raising revenue under its taxing powers, or was it enacted primarily as a regulatory measure, under the police power?

"(2) If the court holds the act to be a regulatory measure, enacted by the Legislature under its police power, is it valid and constitutional, as against the contention by appellees that the license fees imposed are excessive and in violation of section 48 of article 3 of the Constitution, providing that, 'The Legislature shall not have the right to levy taxes or impose burdens upon the people, except to raise

revenue sufficient for the economical administration of the government'?

"(3) Is section 5 (and related provisions) of the act valid against the objection that it violates either of the following provisions of the State Constitution, to wit, section 3 of article 1, guaranteeing equal rights and prohibiting special privileges; section 19 of article 1, the 'due course of law' provision; and section 2 of article 8, the equal and uniform occupation tax provision?

"(4) Is section 5 (and related provisions) of the act valid as against the objection that it violates the 'due process' or the 'equal protection' clauses of the Fourteenth Amendment to the Federal Constitution?

"(5) Is section 5 (and related provisions) of the act valid in view of the exemptions, as against the contention that the exemptions are not based upon any factual differences between the burdened and unburdened subjects, but are unreasonable, whimsical, arbitrary, therefore, violative alike of the provisions of the State and Federal Constitutions mentioned in questions 3 and 4?

"(6) If the court holds that the exemption of the businesses mentioned in section 5 was arbitrary and not based upon any reasonable difference between the businesses burdened and the businesses exempted, therefore invalid, would this fact render nugatory and invalid the remaining part of section 5—in other words, was it the intention of the Legislature, primarily, to exempt these businesses if it could validly be done, but if not, in view of the 'saving clause' of the act, section 11, Vernon's Ann.P.C. art. 1111d, § 11, did the Legislature intend that, all businesses falling within the main definition of stores or mercantile establishments, including those attempted to be exempted, should be brought under the operation of the act?"

After a lengthy discussion of the questions involved, with full citation of authorities, the Supreme Court, in an opinion by Judge HICKMAN, answered the certified questions as follows:

 Question No. 1 was answered in language quoted from the tentative opinion, as follows: "We think the primary purpose of the Act was to raise revenues, although the levy is mentioned as a 'license fee.'

The emergency clause reciting the need of additional revenue; the amounts levied being far in excess of regulatory needs, and the distribution made after collection, indicate clearly that the Act was intended, primarily at least, as a revenue measure. We do not think it a matter of significance that the levy is called a 'license fee,' as its payment gives the right to carry on the business without the performance of any other condition." The court having answered that the act was a revenue raising measure, question No. 2 became immaterial, hence was not answered. Questions 3 and 4 were also answered in the language of a conclusion announced in the tentative opinion, as follows: "So, we conclude that the validity of the Act in its affirmative operation—that is, in the classification of the subjects taxed—is no longer an open question, but has been definitely settled against the contention of appellees." Question No. 5 being answered in the affirmative, question No. 6 passed out and was not answered. See Hurt v. Cooper, Tex.Sup., 110 S.W.2d 896, 900, 905.

At this juncture, appellees filed a motion, praying that the judgment of the trial court be reversed and the cause remanded for further proceedings; the contention being that, in the discussion preceding the answer to question 5, the Supreme Court found the fifth clause of section 5 of the act, the "manufacturer exemption" clause, to be ambiguous; the clause reads: "or any place or places of business used as bona fide wholesale or retail distributing points by manufacturing concerns for distribution of products of their own manufacture only"—which indicates, so appellees contend, that said clause has a different meaning and presents a theory other than the one on which the case was tried, probably rendering the statute unconstitutional and void; therefore they seek to have the case remanded to the trial court, that evidence bearing upon the legislative intent may be taken and in this way clear up the ambiguity or uncertainty in meaning allegedly found by the Supreme Court.

In the first place, we do not think the Supreme Court found an ambiguity or uncertainty in the meaning of the statute. The opinion in the respect under consideration simply states that "the least that can be said is that the language is reasonably susceptible of the construction which we have given it. That construc-

944

tion upholds the act and should, therefore, be applied rather than one which might invalidate it."

■ But aside from that, in the last analysis, appellees seek to have this court hold that a question of law certified to the Supreme Court, and answered as such, is really a question of fact to be heard and determined as such in the trial court. The motion is altogether untenable. Our duty in the premises is plainly directed by statute. Where certified questions are propounded by a Court of Civil Appeals, article 1759 defines the duty of the Supreme Court as follows: "The Supreme Court, on receiving such record, and certified question of law, from the Court of Civil Appeals transmitting the same, shall examine such record and certified question of law, and render an opinion as in other cases; which opinion, when so rendered by the Supreme Court on the record and question of law presented therein, shall be final and shall be the law on the question involved until said opinion shall have been overruled by the Supreme Court or abrogated by legislative enactment, and the Court of Civil Appeals shall be governed thereby. After the question is decided, the Supreme Court shall immediately notify the lower court of its decision."

Articles 1851 and 1854, R.S., define the duties of a Court of Civil Appeals in the situation presented. These statutes read: "Art. 1851. Whenever there shall arise an issue of law which a Court of Civil Appeals should deem advisable to present to the Supreme Court for adjudication, the presiding judge shall certify the question to be decided by the Supreme Court. Pending the decision of the Supreme Court, the cause in which the issue is raised shall be retained for judgment in harmony with the decision of the Supreme Court upon the issue submitted. * * * Article 1854. When the Supreme Court decides a question certified to it by a Court of Civil Appeals, such decision shall be binding upon the Court of Civil Appeals."

We therefore overrule appellees' motion to reverse and remand the cause, but, in harmony with the decision of the Supreme Court and in obedience to controlling statutes, we reverse the judgment of the trial court granting a temporary injunction in favor of appellees against appellants, and here render judgment for appellants, dissolving the injunction.

Reversed and rendered.